### SILVERMAN v. BINDER et al.

(Supreme Court, Appellate Division, First Department. February 19, 1909.)

1. NEGLIGENCE (§ 134*)—DIRECTION OF WORK—SUFFICIENCY OF EVIDENCE.

In an action against the owners of a building under construction for injuries to a servant of a contractor for a portion of the work, evidence *held* insufficient to show that defendants were at the building on the day of the accident, and instructed plaintiff and his co-workers that the walls were ready and safe for them to go to work.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 270; Dec. Dig. § 134.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 330*)—INDEPENDENT CONTRACTORS—ADMISSIBILITY OF EVIDENCE.

In an action against the owners of a building under construction for injuries to a servant of the contractor for a portion of the work resulting from defective mortar used in a wall, where it appears that the wall was constructed by an independent contractor, evidence is admissible that defendants had nothing to do with the mixing of the mortar, though they furnished the materials.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1271; Dec. Dig. § 330.*]

3. MASTER AND SERVANT (§ 315*)—INDEPENDENT CONTRACTORS—INJURY TO SERVANT.

The owner of a building under construction is not liable to an employé of a contractor engaged in one portion of the work for injuries resulting from the negligence of the employé of a contractor engaged in another portion thereof, unless he interfered with the prosecution of the work and was guilty. of some act of negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1241, 1248, 1249; Dec. Dig. § 315.*]

Appeal from Trial Term, New York County.

Action for personal injuries by Jacob Silverman against Jacob Binder and another. From a judgment entered on a verdict for $3,000 in favor of plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Frank Verner Johnson (Charles J. Fay, of counsel), for appellants.
Leo Lerner (Alfred D. Lind, of counsel), for respondent.

CLARKE, J. The defendants were the owners of a building in process of erection. They furnished the materials, but entered into contracts with various firms to do the different kinds of work required. They made a contract with Glick & Allen for the mason work and with Levine & Posner for the iron work. Plaintiff was an iron worker employed by Levine & Posner. Upon the day of the accident the plaintiff and three other iron workers were engaged in laying the iron beams upon the walls which had been built by Glick & Allen, and were level with the street, about 11 feet or 12 feet high, and about 16 inches thick. They had been working upon these walls in laying the iron beams up to about half past 3 in the afternoon. Planks were laid on top of the wall. At this time Green, who was in charge of the iron workers, and Kaplovitz were laying a beam. As they lifted the beam, they called Silverman, the plaintiff, to push out the plank so that it should drop into the cellar, in order that they might be able to set the beam in the right place. Silverman pushed the plank with his foot, some bricks fell from the wall, and he fell with them into the cellar, and sustained the injuries complained of.

The learned court submitted the case to the jury upon the theory that the defendants had personally invited the plaintiff upon this wall upon the assurance that it was in a safe and proper condition. He charged:

"Upon the theory of that testimony, I have allowed this case to go to you as to the liability of these owners; that theory being that on inquiry being made by Green of the defendants he was told the wall had been constructed for two or three days; that everything was ready and to go ahead. I therefore charge as matter of law that, if Silverman went to work on the assurance of the defendants that this wall had been completed for two or three days and everything was ready, it was a species of invitation which carried with it a presumption that the walls were in a safe and proper condition so far as their construction was concerned to enable Mr. Silverman to do the work that he went there to do."

And again:

"But the pivotal point in this case is: First, did Silverman and Green have this talk with Binder and Baum that morning, and were they told by either of those defendants to go ahead with that work on that wall, because it had been ready for two or three days? If you find that no such talk took place, that is the end of the case; you must find for the defendants."

Green, who was in charge of the iron workers, testified:

"I got to the building of Binder and Baum about 8 o'clock in the morning. When I got there, Mr. Baum was on the job and another man. * * * The Mr. Baum that I saw there that morning was one of the firm of Binder & Baum. I asked him if everything is ready, if I should go to work. He said to me: 'We are ready about two or three days. We are waiting for you fellows that you should go ahead and put the beam up, because we want to put up the scaffold to go ahead with the building.' * * * I did ask Mr. Baum if everything was ready and if I should go to work with my men. He said: 'I am waiting for you about two days. Why don't you come up the day before?' I told him: 'That is not my business. They did send me to-day, and I did come here to-day that I should go to work with my men.' He saw me go to work then. He was around there when I started to go to work."

Silverman testified:

"On the morning of that day I went to that place in Cherry street with Mr. Green. When I got to the building, I saw there Binder and Baum. Mr. Green talked to them. They talked in Yiddish. I heard what Green said and what the other man said. Binder said to him that the walls had been finished two days.

"Q. Did he say who had finished the walls? A. They themselves. Binder said that he was waiting for him. The walls had been finished. He was waiting for him to lay the beams."

Under cross-examination he testified:

"I heard Mr. Binder talk that morning to Mr. Green. I heard Mr. Baum talk, too. I see them in court now. They sit there, both of them. I know them."

A person in the courtroom was pointed out to the witness, and he was asked, "Which is that, Mr. Binder or Mr. Baum?" and he answered: "That is Mr. Baum. Mr. Binder and Mr. Baum talked to Green. I heard them talk." The person in the courtroom that he identified as Mr. Baum proved to be a Mr. Hauben.

So that we have the conversation which the court left to the jury as the pivotal point of the case, with the instruction that, if the jury found that no such talk took place, they must find for the defendants, testified to by one witness as having taken place with Baum and by the other witness as having taken place with Binder, although Baum was present, and this witness identifying a man as Baum who it was

conceded was not Baum. To meet this Baum testified that he was not on the job, not at the premises, on the day in question. He never had any conversation with Green regarding how long the walls had been up; that he did not see Mr. Green on the job; that he was not on that job when the iron work was done; and that the building was up to the fifth floor before he had ever gone there. Binder testified that Green did not have a conversation with him and Mr. Baum on the morning of the day on which the accident occurred; that he had never gone to the building before it was all complete, everything was fully finished and completed, and the roof on. Hauben testified that he was the man identified by Silverman as Mr. Baum; that neither Binder nor Baum was at the building on the day of the accident; that he, Hauben, was there on that morning, and told Green to go ahead and lay the beams.

We conclude that the finding of the jury that the conversation with the defendants or either of them which the court held was an invitation and an assurance of the safety of the walls actually took place was against the weight of evidence. Under the charge the jury must have found that this conversation did take place, because, if it did not, the court instructed them that they must find for the defendants. The verdict, based upon such finding, cannot stand.

The respondent attempts to support the judgment upon the proposition that the defendant owners of the property supplied defective material which caused the accident, and therefore were liable for the consequences thereof to the employés of any contractor working on the building. Green testified that, after Silverman fell from the wall, he examined the bricks which fell into the cellar; that they were bright and clean, and that no mortar adhered to them; that he picked out of the wall at the place from which Silverman fell several other bricks to which no mortar adhered; and that he ran the mortar between the bricks through his fingers, and it ran like sand, without adherence, and from this evidence it is argued that as the defendants supplied the material they were responsible for the mortar, and this bad mortar caused the accident.

No one corroborated Green in this testimony. He did not report it to any one or make complaints thereof to any one. He and his fellow workmen had been employed upon the walls, walking over and working upon them all that day until half past 3 o'clock, went back upon them the next morning, and continued until they finished their job, and nothing else fell. It was proved by an abundance of evidence, and with no contradiction, that proper materials for the mortar had been furnished by the defendant, Cow Bay sand and Rosendale cement, in the proportions of three to one, which, it was testified to, was the proper proportion and in compliance with the building regulations. Upon this point of the case, it appearing that Glick & Allen did all the mason work, and that the defendants furnished the materials, the question was asked of Glick: "Binder & Baum, did they have anything to do with the mixing of the mortar?" This question was objected to, the objection was sustained, and defendants excepted. If the defendants are to be held liable upon the theory of having furnished improper materials, the refusal to admit this evidence was

fatal error, because this theory depends upon the active, and not the passive, negligence of the defendants. When they furnished proper materials to the masons to make the mortar, their duty was performed. If it was the defendants' duty, and if they did, as matter of fact, mix the mortar, then it might be that they were responsible for the mortar. It was material, therefore, to show that they had nothing to do with this mixing, and the exclusion of the evidence was error.

Here was a case presented of independent contractors. The owner was not responsible to an employé of a contractor engaged in one portion of the work for the negligence of the employés engaged in another portion thereof unless the owner interfered with the prosecution of the work, and was guilty of some active negligence. Murphy v. Altman, 28 App. Div. 472, 51 N. Y. Supp. 106; Callan v. Pugh, 54 App. Div. 548, 66 N. Y. Supp. 1118; Hogan v. Arbuckle, 73 App. Div. 591, 77 N. Y. Supp. 22. No such interference was shown, and the attempt affirmatively to disprove it was prohibited by the ruling alluded to.

For these reasons, the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.