will arise where expressions beyond such as are necessary for the purposes of the communication are included; but, whatever the proof available, plaintiff need not allege such matters of evidence in his complaint.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 198; Dec. Dig. § 83.*]

Appeal from Special Term, New York County.

Action by Nathan C. Mellen against the Athens Hotel Company. Demurrer to the complaint overruled, and defendant appeals. Affirmed.

See, also, 149 App. Div. 534, 133 N. Y. Supp. 1079.

The following is the opinion of Bischoff, J., at Special Term.

[1, 2] There can be no question that the matter contained in the letter set forth in the complaint injuriously affected the plaintiff in his profession. While the surrounding circumstances, as alleged, would indicate reason for a ruling upon the trial that the letter was a privileged communication, because referring to a matter of business interest common to the writer and the addressee, the complaint is not rendered thereby insufficient in law. If the writing were ostensibly privileged, a malicious intent upon the part of the writer would destroy the privilege; but the plaintiff would have the burden of proving malice upon the trial. Odgers on Libel and Slander (4th Ed.) p. 236; Hemmens v. Nelson, 138 N. Y. 517, 529, 34 N. E. 342, 20 L. R. A. 440.

[3] An inference of malicious intent may arise from the writer's inclusion of expressions beyond such as are necessary for the purpose of the privileged communication; but, whatever the proof available, the plaintiff need not allege his evidence. Here the complaint sets forth the fact that the matter was published maliciously, and upon proof within the allegation of fact a case for the recovery of damages would be presented.

Demurrer overruled, with costs, with leave to defendant to plead over on payment of costs within 20 days.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Theall & Beam, for appellant.
Strong & Mellen, for appellee.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of Bischoff, J., with leave to defendant to withdraw demurrer and to answer on payment of costs.

Order filed.

---

(78 Misc. Rep. 393.)

KEYSER v. REID–PALMER CONST. CO.

(Supreme Court, Appellate Term, First Department. December 6, 1912.)

1. MASTER AND SERVANT (§ 116*)—INJURIES—"WAYS, WORKS, AND MACHINERY."

A scaffold, which collapsed while plaintiff was standing on it nailing strips to the ceiling, which was portable and consisted of planks resting upon horses, was a part of the employer's "ways, works, and machinery," within Employer's Liability Law (Consol. Laws 1909, c. 31) § 200, as amended by Laws 1910, c. 352.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*

For other definitions, see Words and Phrases, vol. 8, pp. 7420, 7421.]

---

2. MASTER AND SERVANT (§ 321*)—MASTER'S LIABILITY—PROPERTY "FUR-
   NISHED."

The fact that the general contractor permitted a subcontractor to use its material for the construction of a scaffold, the breaking of which injured an employé of the subcontractor, did not make the scaffold the general contractor's "property," or make it one "furnished" by it, within the Employer's Liability Law (Consol. Laws 1909, c. 31).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1262; Dec. Dig. § 321.*

For other definitions, see Words and Phrases, vol. 4, pp. 3010–3013.]

3. MASTER AND SERVANT (§ 321*)—MASTER'S LIABILITY—CONSTRUCTION OF
   SCAFFOLD.

The fact that the general contractor's superintendent told the subcontractor's foreman to use material belonging to the general contractor lying on the floor for constructing the scaffold from which an employé of the subcontractor fell would not make the general contractor liable as having constructed the scaffold.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1262; Dec. Dig. § 321.*]

Appeal from City Court of New York, Trial Term.

Action by Clemens Keyser against the Reid-Palmer Construction Company impleaded. From a judgment for plaintiff, and an order denying motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued November term, 1912, before LEHMAN, PAGE, and HOTCHKISS, JJ.

Amos H. Stephens, of New York City (E. Clyde Sherwood, of New York City, and William B. Davis, of counsel), for appellant.

Morris Weiss (L. F. Fish, of New York City, of counsel), for respondent.

HOTCHKISS, J. This action was brought under section 200 of the Employer's Liability Law (Consol. Laws 1909, c. 31), as amended by chapter 352, Laws 1910. While plaintiff was standing on a scaffold, nailing furring strips to the ceiling, the scaffold collapsed, throwing him to the floor, and causing him serious injury. The scaffold was a portable affair, consisting of planks resting upon "horses."

[1] The only witness who pretended to speak positively as to the cause of the accident swore that it was due to the splitting of a brace on one of the "horses" at the place where the brace was nailed to the "horse." The appellant was the general contractor for the alterations and additions which were being made to the building. Plaintiff was in the employ of one Isele, a subcontractor under defendant. The scaffold was one of several used for the same general purpose, all of which were built by Isele's men. Plaintiff had helped to build one or more of the others; but the only part he took in the construction of this particular scaffold that fell was to assist in selecting the planks and putting them in place. Since the decision in Caddy v. Interborough Rapid Transit Co., 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30, it cannot be doubted that this scaffold comes within the definition of "ways, works, machinery or plant." Whether the case comes within the doctrine of Kimmer v. Weber,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630, and Gombert v. McKay, 201 N. Y. 27, 94 N. E. 186, it is unnecessary to determine.

[2] If the judgment is to be sustained, it must be upon one or both of two theories: (1) That the scaffold was "the property of the employer, or * * * furnished by him"; or (2) that appellant directed the construction of the scaffold, and selected the material of which it was made. There is no evidence of such ownership as the statute contemplates. The proof was that appellant owned the planks. The pieces of which the remainder of the scaffold was composed were picked up from material lying about; but whether or no such material belonged to appellant did not appear, nor, in my opinion, was the fact of any such ownership material.

It is not contended that the appellant was under any obligation to furnish the scaffold, or that it was used as an instrument in work which it was performing. Assuming that appellant was the owner of the congeries of material of which the scaffold was composed, it might be said that legally, in a certain sense, it was the owner of the completed structure. But it is clear that for the purposes of the work in hand, and the uses to which the scaffold was devoted, it was, *qua* scaffold, neither his "property" nor was it "furnished" by him. The fact that appellant loaned to Isele, its subcontractor, or permitted him or his workmen to use, its material for the construction of the scaffold, did not cast upon it any duty or responsibility with respect to the structure resulting from the use of such material. As a scaffold, the structure was Isele's, and his only. Appellant did not build it, or cause it to be built, nor did it select the materials from which it was built, or use it in its work. So far as the work or the use which was made of the scaffold was concerned, appellant was as much of a stranger as it would have been had it borne no relation to the building.

[3] Nor did the evidence justify the conclusion that appellant directed the construction of the scaffold or selected the materials composing the same. The only evidence connecting defendant with the direction of the work tended to show that when Isele's men were about to shift some of the other scaffolds to a point under the portion of the ceiling where the accident occurred, appellant's superintendent told Isele's foreman to leave them where they were for use by the plasterers, who were to follow, and to build another scaffold, which they proceeded to do; the scaffold so constructed being the one that fell. One of plaintiff's witnesses testified that appellant's superintendent also told Isele's foreman to use the "material that was laying on the floor." This was far from sufficient to cast upon appellant responsibility for the quality and character of the materials selected by the foreman or the manner in which they were put together in making the scaffold. See Silverman v. Binder, 130 App. Div. 581, 115 N. Y. Supp. 54; Kaplan v. Friedman Construction Co., 148 App. Div. 14, 132 N. Y. Supp. 233; Lipschitz v. Koeppel, 144 App. Div. 352, 128 N. Y. Supp. 1012.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.