Henry W. Hooey, Appellant, *v.* Airport Construction Company and Another, Respondents.*

Third Department, January 15, 1930.

*Leary & Fullerton* [*A. W. Pitkin* and *James A. Leary* of counsel], for the appellant.

*Jacob I. Goodstein,* for the respondent Airport Construction Company.

*Thomas J. P. Cawley* [*John W. MacDonald* of counsel], for the respondent Tobin & McKenna, Inc.

Whitmyer, J. On June 9, 1928, defendant Airport Construction Company was general contractor in the construction of hangars for the Albany Airport; defendant Tobin & McKenna, Inc., was subcontractor for the brick work; and plaintiff was an employee

---

* Mod., 253 N. Y. 486.

of the subcontractor for the steel work and glazing. The contracts are not in evidence and it does not appear how much control was retained by the general contractor or what duties, if any, rested upon it, after the different subcontracts were made. On the date stated, about thirty-five feet of a brick wall, which was approximately fifty feet long, twelve feet high, and eight inches thick, and was constructed by the brick work subcontractor, fell in a strong wind. Plaintiff was injured thereby in the course of his work. It was the south wall of a leanto, connected with one of the hangars, and had been put up within the twenty-four hours before. A little brick work remained to be done thereon by the brick work subcontractor after the glaziers finished. The leanto was without roof, rafters or partitions. The place was an open field, where strong winds blew. It is not claimed that the wall was not built according to plans and specifications or that it was improperly built. It is claimed, only, that it was not braced and that no warning thereof was given. It does not appear that the contract required bracing and, if so, whose duty that was. It appears, only, that it was the custom to brace such a wall with a two by four or heavier brace, until the wall was tied in with the rafters, and that the carpenters were charged with that duty. Carpenters were there at the time. The duty to warn, if not fixed by the contract, followed the duty to brace, unless the duty in that respect was in the general contractor. At any rate, it does not appear that the duty rested upon the brick work subcontractor. The evidence fails to show any omission of duty on its part. (*Cochran* v. *Sess*, 168 N. Y. 372, 374; *Hardie* v. *Boland Co.*, 205 id. 336, 338; *Ryan* v. *Feeney & Sheehan Building Co.*, 239 id. 43; *Shannahan* v. *Empire Engineering Corp.*, 204 id. 543, 550.)

Subcontractors performed the different parts of the work under contracts with the general contractor. Whether or not the general contractor retained any control does not appear. One Murphy was its representative in some capacity. By plaintiff, it is claimed that Murphy interfered to such an extent as to fasten liability upon the general contractor, at least so far as to make that question one for the jury. On the other hand, the contractor claims that he did only what he had the right to do in looking after the work and did not assume to control or direct any of the work. Plaintiff spoke of him as " Superintendent of the Airport." He was there while the work was progressing. On one occasion, when the glaziers, including plaintiff, did not know how to get into the airport with some glass, Murphy directed them to follow him and he led them to a place handy to their work. On another occasion he said to someone " speed is what we want." Again, plaintiff

said that he heard him give orders to the painter. What he heard was a complaint to the foreman about the few men he had and a statement that he wanted more there or that he was going out to get them. He told the mason foreman that he wanted to get the wall up so as not to hold up the glaziers. He ordered the carpenter foreman to have his men put the lintels up so that the glaziers could get their sash in. He told the glaziers to get in as soon as the carpenters finished, to put the sash in and then to get out. In addition, he told the glaziers to commence the afternoon they did, but did not direct them as to the manner in which their work was to be done. On one occasion, at the time the first hangar was being built, when Governor Smith was coming, he told the workmen to commence at a certain end and to go a certain way, so as to make as much of a showing as possible on that side. He told plaintiff that he wanted speed. And he told the carpenter to lose no time. On the other hand, the glaziers, also, were in a hurry to finish their work and to get away. Murphy's efforts were directed only towards speeding the work. The evidence does not show that he took any affirmative part in the performance. His efforts do not constitute active participation. In that situation there is not enough to make the general contractor's liability a question of fact. (*Besner* v. *Central Trust Co.*, 230 N. Y. 357, 362; *Silverman* v. *Binder*, 130 App. Div. 581, 585; *Joyce* v. *Convent Avenue Construction Co.*, 155 id. 586, 588, 589; *Hawke* v. *Brown*, 28 id. 37.) In *De Lee* v. *Pardy Construction Co.* (249 N. Y. 103, 106) the superintendent made a representation that the scaffold would sustain the additional weight which caused the collapse. Moreover, plaintiff knew that the wall had just been built and was just as anxious to finish his work as Murphy was to have him. Plaintiff did not make out a case.

The judgment should be affirmed.

VAN KIRK, P. J., and HINMAN, J., concur; HASBROUCK, J., dissents; DAVIS, J., dissents as to the nonsuit in favor of the defendant Airport Construction Company. (See *Murphy* v. *Rochester Telephone Co.*, 208 App. Div. 392; affd., 240 N. Y. 629; *Coughtry* v. *Globe Woolen Co.*, 56 id. 124; *McGlone* v. *Angus, Inc.*, 248 id. 197; *De Lee* v. *Pardy Construction Co.*, 249 id. 103; *Flanagan* v. *Ley & Co., Inc.*, 241 id. 607.)

Judgment affirmed, with costs.