J. A. WATSON, GUARDIAN, v. BLACK MOUNTAIN RAILWAY
COMPANY.

(Filed 3 December, 1913.)

1. Trials—Continuances—Court's Discretion—New Parties.

The question of continuance is ordinarily a matter appealing
to the discretion of the trial judge, and his action in refusing
a motion for a continuance as a matter of right, for making a
new party to the action at the instance of the appellant, where
no change has thereby been made in the pleadings and the
issues, and no suggestion that it would be prejudicial to him to
immediately proceed with the trial, is not held erroneous.

2. Same—Prejudice of Rights—Appeal and Error.

There is no change of parties to an action, in a legal sense,
where a guardian ad litem is appointed on the ground of mental
incompetency of one of them; and where such guardian is ap-
pointed and made a party at the trial term of the action, with-
out change of pleading, it does not give the opposing party a
legal right to continue the cause, and the refusal of the trial
judge to grant his motion is not reviewable on appeal.

3. Corporations—Negligence—Independent Contractor—Master and
Servant—Production of Books—Evidence—Trials.

Where a defendant corporation relies upon the defense of an
independent contractor in an action to recover damages for a
personal injury alleged to have been negligently inflicted, and
upon notice produces at the trial the minutes of the stockhold-
ers and directors bearing upon the employment of the alleged
independent contractor, the production of the books is at least
sufficient evidence of genuineness to justify their admission on
the part of the plaintiff, and are properly received in evidence
when tendered by him; and it is held in this case that evidence
which tended to show that one who substantially owned the
defendant company and was in a position to change the contract
made by it with him, was not such an independent contractor as
would relieve the company from liability for his negligent acts.

4. Master and Servant — Negligence—Dangerous Work—Independ-
ent Contractor—Vice Principal—Instructions to Employees—
Trials—Evidence—Nonsuit.

The plaintiff was engaged at the time of his injury for which
this action to recover damages was brought, in drilling holes
for blasting a right of way for defendant's road, using dyna-

mite and powder, and there was evidence tending to show that the injury was caused by his having been directed, by the vice-principal, to drill into a hole in a rock which had failed to explode, to clear it out, while the safe method, followed up to that time, was to use a sharpened stick or the hands for the purpose; that in using the drill the plaintiff relied upon the knowledge or judgment of the vice-principal, though he was an experienced man in such work: *Held*, (1) the evidence was sufficient upon the question of defendant's negligence to take the case to the jury; (2) the character of this class of work is so intrinsically dangerous that the defense of independent contractor will not avail. *Arthur v. Henry*, 157 N. C., 402, cited and applied.

5. **Trials—Compromise—Evidence—Witness—Bias.**

The defendant corporation was sued to recover damages for personal injury to an employee, and under cross-examination its president was required to testify, under its objection, as to conversations with the plaintiff and his attorneys, in an attempt to compromise the suit before trial, and especially as to his statements that plaintiff's attorneys were holding up the compromise because of their contingent fee; that under the plaintiff's arrangement with his attorneys he had agreed to pay too much; that he had approached the plaintiff, when he agreed at a prior term of the court not to do so, etc.: *Held*, the evidence was competent as bearing upon the bias of the witness in being unduly zealous in the defendant's behalf, and having been properly restricted by the trial judge to this purpose, its admission was not error.

APPEAL by defendant from *Daniels, J.,* at April Term, 1913, of MITCHELL.

This is an action to recover damages for personal injury.

When the case was called for trial, the defendant asked leave to file a plea since last continuance, alleging that a guardian had been appointed for the plaintiff since the last term of the court on the ground of the mental incompetency of the plaintiff.

The motion was allowed; the guardian, John A. Watson, came into court and adopted the complaint heretofore filed.

The defendant then moved for a continuance on the ground that a new party had been made at this term, but in the exercise of its discretion the court overruled the motion and directed the cause to proceed, and the defendant excepted.

164—12

The plaintiff testified, among other things: "I had worked on the Carolina, Clinchfield and Ohio Railway, off and on, about eight years. I generally drilled, put the loads in holes and shot. I worked mostly with the rock crew. They used dynamite mostly as an explosive on the C. C. and O.; sometimes black powder. I had seen a great deal of blasting done with dynamite, and had helped to do it. I had about eight years experience in this kind of work. I had blasted in mica mines. I had full control and use of the dynamite. I know the danger of dynamite and knew the danger when I worked in mica mines and used the dynamite myself, and I had worked on other roads than the C. C. and O. I had right smart experience in work on the Tennessee Central below Knoxville. I worked on the steel gang most of the time. The biggest portion of my life since I have been big enough to do public work, I have worked on the rock crew. I have farmed a little. On all of these jobs we used dynamite. We used powder in the top of the hole generally. We put in powder sometimes to shoot with a fuse. I have loaded a good many of these fuses myself or loaded the powder. All are supposed to go off at once, if there ain't nothing wrong. I have had a great deal of experience in helping to clean out holes that had been shot. I have been helping to clean out holes when they failed to fire, for a number of years. I was injured on 16 May, 1911. I have never been able to see anything since that date. I do not go about in the country from house to house when court is not in session. I never go from one house to another by myself. I never have since I was injured without some one with me. I knew it was dangerous to drill into a hole that had been loaded with dynamite without it having been cleaned out. I knew it was dangerous if you go down to the dynamite. If you happened to strike it, it would explode. The proper method of cleaning out a hole is to clean it out carefully with a swab pole until you get down in order to see if there is any dynamite in there. You would take a sharp stick, sometimes take a little spoon with a little scraper on it, and sometimes take your hands. There was no danger if you used a sharp stick. Sometimes you

would use your hands. There was no danger in this method. The only dangerous method was drilling in there. I recollect Mr. Buckley coming along before I was injured. He was my foreman. He hired and discharged the men. Mr. Buckley gave orders as to how the work was to be done. Mr. Buckley hired me. Buckley put me to do the work at this hole. I was there when the blast was put off. There were five or six holes. They were drilled on the Saturday before that and loaded that morning and fired and then they came back and put us on that hole and blowed up. Mr. Buckley put us on that hole. The first time Mr. Buckley put us to work, he told us to put that hole down. He told us how far to put it. He told us to put them holes about a foot below grade. Manassa Thomas was working with me. We then started to clean the gravel out. Cleaned it out with the stick. Mr. Buckley came along and said, 'Boys, you can't get it done that way. Gus, you will have to get a drill and hammer it down.' We got a drill and Mr. Thomas was holding and I was drilling; we struck five or six licks, and it exploded. After that explosion I didn't know anything. We didn't have any drill when he first came there—kinder swabbing it out. There was no drill close to the hole. Mr. Thomas went for the drill and brought it back. He was holding the drill and I was hammering. I stopped cleaning it out the way I was cleaning and put the drill in and went to hammering because I was going to rely on him. I thought if there had been any dynamite in that hole, he knew it. I was relying on his word. I knew I was working under him, and if I didn't obey his orders he would turn us off. I didn't know whether there was any dynamite in there or not. I 'lowed he knew or else he would never have put me on."

One of the defenses relied on by the defendant was that the work, in doing which the plaintiff was injured, was in charge of Charles L. Ruffin, an independent contractor, and to meet this defense the plaintiff served notice on the defendant to produce in court the minutes of the meetings of the stockholders and directors of the defendant company. Books purporting to be such minutes were produced in response to the notice, and offered in evidence by the plaintiff.

The defendant excepted upon the ground that the books were not produced under order of court, but in response to notice.

The president of the defendant company was examined as a witness, and among other things testified on cross-examination: "I am a lawyer and practice in this county, in Yancey, and in other counties. I have risen in this case and made objections more by intuition than anything else. I did state at the last term of the court that I knew of no effort to settle this case, and that none would be made. And I would not have made any attempt unless conditions had radically changed. As I understand the law, the law wants you to compromise. I approached the man to compromise after notice to you and Mr. McBee, and I felt at liberty under all legal ethics to come and approach your client. I offered you an amount that your client said was ample, but was not able to accept because he had to pay you so much. I told him that all you were after was his money, and I believe it. The negro is being maintained by you and Mr. McBee. I said you were after the railroad's money. I think that it is professional, after I went to see you gentlemen, and you told me that you and I would part right then. I don't think his Honor could take a right from me authorized by the statutes of North Carolina which encourages compromises. I offered your client the amount you had made to me over there as we got on the train at Toecane. I don't want to go into these things. I want to state in regard to the professional ethics—I don't want to go into this thing. You know what has actuated me in this cause, and as a matter of fact, I hold the signed statement that this man Forney gave to me and that his attorneys wanted to hold up the amount. That they would not ratify the statement over there. I don't know but that I told your client that he had an improvident contract. I may have stated the amount I offered you is ample. He wanted to take it, but by reason of having to pay you men, he said he was held by your contract. I wanted to pay that negro all that was right, but I don't think I violated the ethics when I attempted to settle it with him. I think I offered him and his lawyers

what is fair. I think I was justified in going to him. I refer. to what I offered you down at the coal station."

The defendant objected to the foregoing evidence in regard to the attempt to compromise the case. Objection overruled. Exception taken, the court stating: "This evidence is offered as having bearing on the weight the jury will give the testimony of the witness, and for no other purpose, and the jury is not to consider it in any other way."

At the conclusion of all the evidence the defendant moved for judgment of nonsuit, which was denied, and the defendant excepted.

There are also several exceptions taken to the rulings upon the question whether Ruffin was an independent contractor.

Verdict and judgment for the plaintiff, and the defendant appealed.

*Hudgins & Watson, John C. McBee, and Pless & Winborne for plaintiff.*

*James J. McLaughlin and J. Bis Ray for defendant.*

ALLEN, J. The guardian was entered upon the record as a party upon the motion of the defendant, and it cannot well say that it was taken by surprise, nor does it claim that it was not ready for trial, or urge any reason for the continuance except as a matter of legal right upon a new party being made.

If new parties are made or amendments allowed, which change the issues, and a party is not prepared with his evidence to meet the changed conditions, he is entitled to a continuance as a matter of right (*Dobson v. R. R.*, 129 N. C., 291), but ordinarily the ruling of the judge upon a motion for continuance is a matter of discretion and not reviewable, and in this case it appears that there was no change in the pleadings or issues, and no suggestion that it would be more prejudicial to the defendant to try at that time than at any other.

We are also of opinion there was no change of parties in a legal sense by marking the name of the guardian on the record. It was said in *Tate v. Mott*, 96 N. C., 23: "Generally, an infant can maintain an action if he has a just cause of action,

just as an adult may do, the only difference being in the mode of conducting it. His action must be brought and prosecuted in his own name, and it is in all respects his, just as if he were of full age; but it must be managed and prosecuted, not by himself, but by his guardian or next friend, under the supervision and control of the court. This is necessary, because of his presumed lack of discretion and want of capacity to understand and manage his own affairs, his inability to bind himself and to become liable for costs. The guardian or next friend is not in a legal sense a party to the action, although his name appears in the record," and this has been approved several times.

The minutes of the meetings of the stockholders and directors of the defendant were properly admitted in evidence.

They were produced by the defendant pursuant to notice, and this is at least sufficient evidence of genuineness to justify their admission, and the defendant does not say now they are not the minutes.

These minutes not only furnish evidence that Ruffin was not an independent contractor, but they go far to establish that he substantially owned the defendant company, and, as testified to by the president of the company, that he was in a position to change the contract under which it was claimed he was working, at will, as he owned a majority of the stock.

If, however, the evidence was incompetent, it would be no ground for a new trial, because the doctrine is well established and is applicable here, that the work at which the plaintiff was engaged is so intrinsically dangerous that protection from liability will not be afforded by an independent contract, and this also disposes of the various exceptions to the rulings of his Honor, and the exceptions to his charge on the question of independent contractor. *Arthur v. Henry,* 157 N. C., 402.

The position of the defendant is undoubtedly true that compromises are favored, and that usually evidence of what has been said or done in an attempt to settle is not competent, but in this case it was not offered as an admission of liability nor to attack the general character of the witness, but to show that although his motives might be commendable to protect a rail-

road which had been recently organized, and which he believed meant much for the development of his section, which had theretofore had no railroad facilities, he was unduly zealous, and had gone so far as to approach the client for the purpose of compromising, after agreeing at a prior term of court that this would not be done.

For this purpose the evidence was competent, as bearing on the bias of the witness, who had testified to important and material facts in behalf of the defendant, and his Honor properly restricted the evidence at the time it was introduced and again in his charge.

The motion for judgment of nonsuit ought not to have been allowed.

The evidence is stronger in behalf of the plaintiff than in *Harris v. Quarry Co.*, 137 N. C., 204, because in this case there is evidence that the plaintiff was pursuing a method which was safe, when he was directed by the party in charge for the defendant to adopt another and more dangerous method, which caused his injury. The authorities sustaining this proposition are collected in *Lynch v. R. R., post,* 249.

We have examined all of the exceptions, including those not assigned as errors in accordance with the rules of Court, and find

No error.