LENA BESNER, as Administratrix of the Estate of
BENJAMIN BESNER, Deceased, Respondent, *v.* CENTRAL
TRUST COMPANY OF NEW YORK et al., as Executors
and Trustees under the Will of AUGUSTUS D. JUILLIARD,
Deceased, Appellants, Impleaded with Another.

Master and servant — negligence — when owner of building
liable for death of workman of contractor, injured by negli-
gent operation of elevator although it was not operated by
owner, but by another under a yearly contract.

1. According to the general rule an owner is not liable when con-
tracting for work to be done with an independent contractor for
accidents that happen in the course of the work. To this general rule
there is an exception where the work contracted to be done may
become inherently dangerous by the acts or interferences of the owner.
In such case the owner is not relieved by reason of the contract from
the obligation of seeing that due care is used to protect such persons.

2. The owner of a mercantile building, the floors of which were
rented to separate tenants, maintained a freight elevator which he did
not operate directly by his own employees, but had a yearly contract
with an engineering company to do the work, gave a contract to a
building company to construct and install safety gates and doors as
required by statute (Cons. Laws, ch. 31), and the building company
sublet the contract to another company, which sent its workmen to

do the work, and while one of them was doing work which required him to lean over into the elevator shaft, he was struck and thrown down the shaft by an elevator lowered without any notice or warning by an employee of the engineering company. *Held*, that the work to be done by decedent was inherently dangerous because the owner was required by his contracts with his tenants to run the elevator at the same time he was compelled by law to install the safety doors. A duty rested upon the owner, a duty to decedent which could not be delegated, to run the elevator with reasonable care not to injure him, and having failed to discharge that duty, he is liable.

*Besner* v. *Central Trust Co.*, 189 App. Div. 930, affirmed.

(Argued February 3, 1921; decided March 1, 1921.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 10, 1919, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Bertrand L. Pettigrew* and *Walter L. Glenney* for appellants. The defendant Juilliard, as owner of the premises, was not negligent in the performance of any duty which he owed to the plaintiff's intestate. (*Silverman* v. *Binder,* 130 App. Div. 582; *Doremus* v. *Auerbach,* 176 App. Div. 512; *Joyce* v. *Convent Ave. Const. Co.,* 155 App. Div. 586; *Blumenthal* v. *Prescott,* 70 App. Div. 560; *Paltey* v. *Egan,* 200 N. Y. 83; *Whitehill* v. *Hartman Construction Co.,* 87 Misc. Rep. 184; 168 App. Div. 928; *Boss* v. *Jarmulowsky,* 81 App. Div. 577; *Martin* v. *Pettit,* 117 N. Y. 118; *Larmore* v. *C. P. Iron Co.,* 101 N. Y. 394.)

*Jacob Zelenko, Moses Feltenstein* and *Leon Sanders* for respondent. The decedent was an invitee and as to him the duty of reasonably careful operation of the elevators was non-delegable. (*Sciolara* v. *Asch,* 198 N. Y. 77; *Quinn* v. *Staten Island R. T. R. R. Co.,* 224 N. Y. 493;

*Paltey* v. *Egan,* 200 N. Y. 83; *Curran* v. *L. C. & M. R. Co.,* 211 N. Y. 60; *Felice* v. *N. Y. C. & H. R. R. R. Co.,* 14 App. Div. 345.)

CRANE, J. Augustus D. Juilliard in March of 1916 was the owner of a six-story mercantile building on the north side of Grand street between Broadway and Crosby street in the borough of Manhattan, city of New York. After the trial of this case Juilliard died and an order was made by the Appellate Division substituting the executors and trustees of his estate as defendants. In this opinion they will be referred to as the owner.

The various floors of the building were rented to separate tenants. The owner furnished these tenants with passenger and freight elevator service. There was one passenger and one freight elevator for the use of all the tenants which it was the duty of the owner landlord to maintain and run for their benefit. This was part of the obligation which he assumed in renting the premises.

The owner, however, did not operate and run these elevators directly by his own employees, but had a yearly contract with the defendant, the Edward Engineering Company, to do this work.

By the agreement dated March 26th, 1913, the Edward Engineering Company agreed to furnish one engineer to supply the necessary steam, one elevator attendant in uniform to operate the passenger elevator and one freight elevator attendant to operate from 7:45 A. M. to 12 M., legal holidays excepted. A woman was also to be provided to clean the entrance, halls and stairs daily. The company further agreed to keep in thorough order the boilers, pumps and electric elevators.

This contract was renewed from year to year and under it the engineering company was operating the elevators on March 12th, 1916.

Prior to that date and in April of 1915, the department of labor had directed the owner to comply with the

requirements of chapter 36 of the Laws of 1909, as amended, by providing among other things self-closing gates of a suitable height or properly constructed sliding doors at all openings in the freight elevator shaft, including the cellar.

The contract to do this work was given to the Steven M. Smith Company, which sublet it to the National Sash and Door Company.

About the first of March the latter company sent two of its employees, of whom Benjamin Besner, the deceased, was one, to the building in question to install the fireproof or sliding doors under its contract with the Smith Company. The doors were manufactured outside of the premises, the work of the plaintiff's intestate and his helper being simply to install them.

In doing this work it was necessary for the workmen to enter a portion of the freight elevator shaft at times. For this purpose they stood upon the floor of the elevator opposite the floor of the building on which they happened to be working. At other times it was necessary for them to stand upon the floor of the building and lean over into the elevator well or shaft.

.During the two weeks in which this work was in progress the freight elevator was necessarily in use by the tenants on the respective floors. The owner had agreed to run this elevator for their requirements and for this he was paid by the rental. Two things were, therefore, going on in the elevator shaft at the same time, the owner's service of running the freight elevator for his tenants and the work of installing the elevator doors which Besner, the deceased, and his helper were doing for the owner.

Besner's work necessarily involved much danger from the operation of the elevator. An arrangement was, therefore, made with the elevator operator to stop his car before reaching the place where the men were at work or to give notice of its descent. In this way the two

classes of work had been carried on in safety until March 12th, the day of the accident.

On that day Besner was at work alone upon the doors fixing and adjusting the locks which were only a few inches from the edge of the elevator shaft. The work required him to lean over into the shaft. While thus at work upon the main floor a shipment of 500 paper boxes came for one of the tenants occupying an upper floor. The boxes were loaded upon the elevator, the operator called and the elevator started. When it had reached the third or fourth floor the operator suddenly reversed the power and lowered the elevator without any notice or warning, striking Besner, who was at work on the lock on the first floor, throwing him into the shaft and causing his death.

The negligence of the elevatorman is not questioned, and from the judgment against his immediate employer, the Edward Engineering Company, no appeal has been taken. An appeal has been taken, however, by the owner from the judgment which held him liable together with his contractor, the engineering company.

Was he liable for this negligence of the freight elevator operator?

If Besner had been a tenant of the owner, an employee of the tenant or a person using the elevator as an invitee of a tenant there would be no question of the owner's liability. The landlord's duty to provide proper elevator service could not be shifted by contract with a third party. (*Sciolaro* v. *Asch,* 198 N. Y. 77.)

It is said that Besner was not a tenant or an invitee of a tenant to whom the landlord owed any duty, nor was he using the elevator. While in the *Sciolaro* case there was a lease by the terms of which the landlord was obliged to operate the elevator for his tenants, yet that part of the opinion must not be overlooked which reads as follows: " Quite apart from the provisions of the lease to which we have referred, the plaintiff's presence in the elevator

was justified by the implied invitation which the appellant is deemed to have extended to all persons who might have business in his building. As to such persons the law imposed upon him as owner the duty of seeing that the premises were in a reasonably safe condition for access and egress. (*Griffen* v. *Manice*, 166 N. Y. 188; 2 Shearman & Redfield on Negligence [5th ed.], sec. 704; *Beck* v. *Carter*, 68 N. Y. 283.) This was a personal duty which the appellant could not delegate." (p. 82.)

There is another principle of law, however, according to which we think this owner was properly held liable.

According to the general rule an owner is not liable when contracting for work to be done with an independent contractor for accidents that happen in the course of the work. (*Silverman* v. *Binder*, 130 App. Div. 581.) To this general rule there is an exception where the work contracted to be done may become inherently dangerous by the acts or interferences of the owner. In *Engel* v. *Eureka Club* (137 N. Y. 100) it was said that among the well-understood exceptions to this general rule are the cases where the thing contracted to be done is necessarily attended with danger, however skillfully and carefully performed or is intrinsically dangerous. In such a case the party who let the contract to do the act cannot thereby escape from responsibility for any injury resulting from its execution although the act to be performed may be lawful. (See, also, *Paltey* v. *Egan*, 200 N. Y. 83, 91.)

The work of Besner was made dangerous and the situation perilous, not from the nature of the work contracted to be done, but from the work which the owner himself insisted upon doing at the same time for his tenants. He was under a contractual duty to run the freight elevator as necessity required, at the same time he was compelled by law to install fireproof doors to the elevator shaft. Besner, who was doing this work, was the invitee of the owner, required by him to stand in the

elevator doorway to do the owner's work. The owner necessarily knew or must have known that the running of the elevator at such a time would render the work dangerous, inherently and necessarily so.

Under such circumstances a duty rested upon the owner, a duty to this man Besner, to run the elevator with reasonable care so as not to injure him. This duty could not be delegated. The case comes within the spirit and meaning of the exception above mentioned.

When the owner of premises which are under his control employs an independent contractor to do work upon them which from its nature is likely to render the premises dangerous to persons who may come upon them by invitation of the owner, the owner is not relieved by reason of the contract from the obligation of seeing that due care is used to protect such persons. The owner cannot continue to hold out the invitation without being bound to exercise due care in keeping the premises reasonably *safe for use according to the invitation.* (*Curtis v. Kiley*, 153 Mass. 123, 126.)

This case comes squarely within this rule.

Here Juilliard had contracted with the Edward Engineering Company to run a freight elevator. He had invited Besner upon his premises to work about the elevator shaft. The running of the elevator was work inherently dangerous under such circumstances and Besner had reason to expect that the premises would be made reasonably safe for his use in so far as that operation was concerned. (*Richmond & Manchester Railway Co. v. Moore*, 94 Va. 493; *Beatty* v. *Metropolitan Building Co.*, 63 Wash. 207; *Donovan* v. *Jay*, 97 Mo. 440.)

The judgment appealed from should be affirmed, with costs.

HOGAN, CARDOZO and POUND, JJ., concur; HISCOCK, Ch. J., McLAUGHLIN and ANDREWS, JJ., dissent.

Judgment affirmed.