VANNOY v. CITY OF WARREN

JOHNSON & ANDERSON, INC., v. NELSON M. SHARROW
EXCAVATING COMPANY, INC.

1. NEGLIGENCE—MUNICIPAL CORPORATIONS—EXEMPT FROM LIABILITY
—INHERENTLY DANGEROUS ACTIVITY.

A city is exempt from liability caused by the negligence of its
independent contractors or third parties, except that if the
work to be done is inherently or intrinsically dangerous, the
city cannot evade the consequence of its failure to take proper
precautions.

2. SAME—EVIDENCE—JURY—QUESTION OF FACT.

Where there is testimony of the presence of gas at a work site,
whether or not the performance of work thereat is inherently
dangerous is a question of fact.

3. SAME—JURY INSTRUCTION—CUSTOM AND USE.

A jury instruction that the city could be liable to plaintiff,
the employee of an independent contractor doing work for
the city, if the jury was convinced that plaintiff could have,
according to the custom and usage in the type of work in-
volved, relied on the city to check the site of work for gas
*held,* not error in view of the holding that the city could not
delegate its responsibility where the work involved was in-
herently or intrinsically dangerous.

4. SAME—JURY INSTRUCTION—PRESUMPTION OF DUE CARE.

Where there was testimony in a negligence action by an eye-
witness to the manner in which deceased plaintiff performed

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Municipal Corporations §§ 571, 586, 587, 596.
[2] 38 Am Jur, Negligence §§ 344, 356, 358.
[3] 38 Am Jur, Negligence §§ 362, 364.
[4] 38 Am Jur, Negligence § 363.
[5] 38 Am Jur, Negligence § 346.
[6] 30 Am Jur, Interest §§ 40, 46, 47.

his work, charge to the jury that the law presumes that a deceased plaintiff used due care was not erroneous when court further charged that the presumption was rebuttable, that if the jury found no credible evidence to the contrary they could presume due care, but that if they found credible evidence to the contrary, the presumption was rebutted.

5. SAME—JURY QUESTION—DUTY TO INSPECT.

It is not error for the trial court to submit to the jury the question of an engineer's responsibility to perform reasonable inspections at a job site, where the engineer prepared the contract documents for the job in question and the contract gave the engineer broad authority over the work site and the contractor's employees and directed him to employ proper and approved means of detecting gas.

6. JUDGMENT—INTEREST—STATUTORY AMENDMENT.

Amendment to statute by which interest on judgment is allowed from date of filing complaint *held*, not to have application to case where complaint was filed before the effective date of amendment (CLS 1961, § 600.6013 as amended by PA 1965, No 240).

Appeal from Macomb, Carroll (Howard R.), J. Submitted Division 2 June 5, 1968, at Lansing. (Docket Nos. 3,478, 3,525.) Decided December 23, 1968. Rehearing denied February 4, 1969. Leave to appeal denied as to both defendants July 8, 1969. See 382 Mich 768. Remanded to Court of Appeals for reconsideration as to when interest should begin. See 382 Mich 771.

Complaint by Pollieanna Vannoy, administratrix of the estate of John Carl Vannoy, for wrongful death against the city of Warren, a municipal corporaiton, and Johnson & Anderson, Inc., a Michigan corporation, which, as third-party plaintiff, brings action against Nelson M. Sharrow Excavating Company, Inc., a Michigan corporation, for indemnity. Verdict and judgment for plaintiff, and third-party

complaint dismissed. City of Warren and Johnson & Anderson, Inc., appeal and plaintiffs cross appeal. Affirmed.

*Zwerdling, Miller, Klimist & Maurer,* for plaintiff Vannoy.

*Nunneley, Nunneley & Hirt,* for defendant city of Warren.

*Ward, Plunkett, Cooney, Rutt & Peacock,* for defendant and third-party plaintiff, Johnson & Anderson, Inc.

*Alexander, Buchanan & Conklin,* for third-party defendant Nelson M. Sharrow Excavating Company, Inc.

R. B. BURNS, J. Defendants appeal from a judgment entered upon a jury verdict for plaintiff. The basic facts of this case have been concisely set forth in *Vannoy* v. *City of Warren* (1965), 2 Mich App 78, 80:

"Plaintiff's deceased husband was an employee of the Nelson M. Sharrow Excavating Co., Inc., which had contracted with the defendant city of Warren to do certain work in connection with the installation of a sewer. On February 21, 1961, the plaintiff's decedent in the course of his employment descended into a manhole, was allegedly overcome by gas, and fell into 7 to 10 feet of water where he died. The plaintiff sued the city of Warren and its engineers, Johnson & Anderson, Inc., under the wrongful death statute alleging negligence on the part of each.

"Pursuant to court order, the defendants filed third-party complaints against the Sharrow Excavating Co., on the basis of an indemnity agreement."

In the conclusion of *Vannoy* v. *City of Warren,* *supra,* the Court agreed with the trial judge that the third-party defendant's motion for summary judgment should be denied because the construction of the indemnity agreement[1] should await the trial. That trial has now been completed. Although the record is scant as to the "situation of the parties and the circumstances surrounding them"[2] in relation to the indemnity agreement, the trial court decided that Sharrow's contract with the city did not "reveal any plain words or unmistakable terms indicating an intention to relieve the city of Warren or Johnson & Anderson or any other entity or person from the consequences of its or his own negligence." This decision is consistent with *Geurink* v. *Herlihy Mid-Continent Company* (1966), 5 Mich App 154. We find no reason for disturbing the trial court's order dismissing the third-party complaint.

The city contends that its affirmative defenses alleging negligence on the part of the deceased were not answered and are deemed admitted. GCR 1963, 111.5 provides that "averments in a pleading to which a responsive pleading is required * * * are admitted when not denied." An averment in the nature of an affirmative defense does not require a responsive pleading unless it expressly requests a reply. See GCR 1963, 1101.1 and 1 Honigman &

---

[1] "The contractor and his sureties shall take responsibility for the work, and shall provide barricades, watchmen and lights, and take all precautions for preventing injuries to persons and property on or about the work; shall bear all losses resulting to him on account of the amount or character of the work, or because the nature of the ground in which the work is done is different from what was estimated or expected, or on account of the weather, floods, elements, or other cause; and he shall assume the defense of, and indemnify and save harmless the owner and its individual officers and agents, from all claims relating to labor, equipment, and materials furnished for the work, inventions, patents and patent rights used in doing the work, also to injuries to any person or property received or sustained by or from the contractor, his agents or employees."

[2] *Vannoy* v. *City of Warren, supra,* p 82.

Hawkins, Michigan Court Rules Annotated (2d ed), Rule 110, § 2.A of Author's Comments, p 180. No such request was included in the city's pleading, and consequently the lack of response in this instance must be interpreted as a denial.

The city also contends that one of those affirmative defenses, contributory negligence, should have prevailed as a matter of law. One witness testified that it was contrary to established practice in this type of work for a man with the decedent's experience to descend a manhole without first checking for gas. However, conflicting testimony on this issue required the trial judge to submit the question to the jury.

Defendant Johnson & Anderson, Inc., argues that the cause of John Vannoy's death has not been established. This was also a question of fact, and there was ample evidence from which a jury could infer that death was caused by decedent's inhalation of methane or "sewer" gas.[3]

---

[3] John Cruny, decedent's fellow worker who was at the scene of the accident, testified that the Sharrow Excavating Company had bypassed tunneling operations from the manhole in question for about six months because of the presence of sand, water and gas. Cruny's account of events at the manhole on the day of Vannoy's death leaves a strong inference of the existence of deadly gas:

"*Q.* Now, when you got to the manhole what did you and Mr Vannoy do, Mr. Cruny? * * *

"*A.* He got approximately 40, 45 feet deep and he started back up He said, 'Something's wrong down here. I can't make it.' He got approximately, I would say, halfway up, about 25, 30 feet and fell out of sight. So, I run over to the crane approximately 200 feet to the next shaft. It had a rope on it and I cut the rope off to try and save that man.

"So, the other boy come in, Mr. Furlong. He asked me what happened; so, I told him. He said, 'I'm going to save that man.' He went down, see. He got way down there about 40, 45 feet, too, see, and he started back up. He said, 'I can't make it, John. Throw me a rope.' So, he got maybe 12, maybe 15 feet from the top and I ran down the ladder myself and I'm holding him with one arm. He weighed about 220 pounds, see I got him around the waist and told one of the truck drivers to throw down the rope. Nobody could have saved him and he stiffened out and he fell and down he went. And I looked and there was nothing on top of myself.

The city objected to the court's instructions which advanced plaintiff's theory that the city was vicariously liable for any negligence on the part of its independent contractor, Johnson & Anderson, if the jury found that plaintiff had proven the allegation[4] that the deceased was engaged in an inherently or intrinsically dangerous activity. The rule that a city is exempt from liability caused by the negligence of its independent contractors (*Lenderink* v. *Village of Rockford* [1904], 135 Mich 531) is subject to the exception that a contractee (the city) cannot evade the consequences of its failure to take proper precautions if the work to be done is inherently or intrinsically dangerous. *Olah* v. *Katz* (1926), 234 Mich 112; *Barlow* v. *Krieghoff Company* (1944), 310 Mich 195 and *Mulcahy* v. *Argo Steel Construction Company* (1966), 4 Mich App 116. The city concedes that the exception is correct when it applies to third persons but argues that it does not apply to the servants or employees of an independent contractor engaged in the inherently dangerous activity.

In Michigan the inherently or intrinsically dangerous activity doctrine is founded upon a theory which is closely akin to, but not exactly the same as,[5] strict liability. The principle is applied "where a duty is imposed upon the employer in doing work neces-

---

"*Q*. Did you have any difficulty breathing down at the 10, 12-foot level?

"*A*. Yes.  *  *  *

"Then, the fire department came  *  *  * They went down [with] gas masks on. I think it was one fireman that was overcome because they put him in a truck and took him away quick."

Firemen also testified as to their usage of oxygen or gas masks in rescue efforts, and an associate professor of geology at Wayne State University indicated that gas had been present in similar geographical areas.

[4] Paragraph 10 of plaintiff's complaint reads: "That the excavation, construction, tunneling and laying of a sewer system was work of an inherently dangerous character; that frequent gas can be found in sewer systems, said gas having intrinsically dangerous attributes."

[5] Absolute liability is not imposed by the doctrine. 23 ALR 1094.

sarily involving danger to others, unless great care is used, to make such provision against negligence as may be commensurate with the obvious danger. It is this duty which cannot be delegated to another so as to avoid liability for its neglect." *Inglis* v. *Millersburg Driving Association* (1912), 169 Mich 311, 321, 322. The doctrine imposes a nondelegable duty upon the party desiring the dangerous undertaking. See 23 ALR 1024. A distinction, as argued by the city, based upon the legal designation of injured parties, *e.g.* "third" persons or "others" as opposed to employees of independent contractors, violates the absolute character of the duty and is contrary to the Court's rationale set forth in *Olah* v. *Katz, supra; Watkins* v. *Gabriel Steel Co.* (1932), 260 Mich 692; *Utley* v. *Taylor & Gaskin, Inc.* (1943), 305 Mich 561 and *McCord* v. *United States Gypsum Co.* (1966), 5 Mich App 126.

Whether the performance of decedent's task was inherently and intrinsically dangerous was a question of fact which the trial judge properly submitted to the jury. It is ludicrous to intimate that working in an atmosphere of deadly, tasteless, odorless and colorless gas without any protective devices is not a dangerous activity. The factual questions concerning the presence of such a gas and other circumstances surrounding decedent's employment prompted consideration of the issue by the jury. See *Olah* v. *Katz, supra,* p 116; *Sun Oil Company* v. *Kneten* (CA 5, 1948), 164 F2d 806; and *Mallory* v. *Louisiana Pure Ice & Supply Company* (1928), 320 Mo 95.

The city of Warren also challenges the following instruction:

"Until or unless it is obvious or apparent or should reasonably have been obvious or apparent

that the engineer or contractor or both were not reasonably competent or had not employed reasonably skilled employees, the city owed no further duty to deceased *unless you are convinced by a preponderance of the evidence that by custom and usage in this type of sewer construction the deceased could reasonably have relied on the city of Warren to check this manhole for gas."* (Emphasis supplied.)

In view of our holding that the city could not delegate its responsibility to another when involved in an inherently or intrinsically dangerous activity, the above charge was more favorable to the city than it should have been and cannot be advanced as ground of error.

The city also assigns as error the giving of the following instruction:

"The law presumes, the law creates a presumption that a person who is deceased and is not able to come to the court and testify, the law presumes that he did use due care."

This presumption of due care does not arise when there are credible eyewitnesses to the accident. *Cook* v. *Grand Trunk W. R. Co.* (1966), 3 Mich App 112. There was an eyewitness to most of Vannoy's actions on the day of his death. The court did consider the legal effect of his testimony. This becomes readily apparent if the above fraction of the relevant instruction is quoted in context:

"However, that is not what we call an absolute presumption. That is rebuttable presumption which means the presumption may be overcome by evidence to the contrary. So in the absence of evidence to the contrary you have a right to presume that Mr. Vannoy was not negligent. However, if you think there is evidence which disproves that or tends to disprove it, then you will consider that evidence and you will weigh that evidence and weigh it

and compare it against the presumption of due care and if the evidence does convince you by a preponderance of evidence that he was negligent, then that presumption disappears and Mr. Vannoy is no longer entitled then to that presumption."

Johnson & Anderson claims the trial court erred by submitting the following instructions to the jury:

"The duties owed by Johnson & Anderson to Mr. Vannoy were these—to make those inspections which a reasonably, competent engineer would make at such times and in such manner as a reasonably competent engineer would make under the same or similar circumstances. When I say same or similar circumstances I mean existence of another contract such as Sharrow contractor doing the work. I mean an agreement such as we have here. The second duty Johnson & Anderson owed to Mr. Vannoy was to see obvious derelictions of duty by the contractor, the Sharrow Company. They had a duty to see those derelictions that a reasonably competent engineer would see and to stop the work or order changes that a reasonably competent engineer would order stopped or changed."

The contract between the city of Warren and Johnson & Anderson states in part:

"Whereas the said party of the first part requires surveys, plans and specifications for said project and engineering supervision of its construction, and

"Whereas the parties of the second and third part are registered engineers, qualified to make such surveys, develop plans and specifications and to supervise construction of said project."

The contract documents for the sewer separation program were prepared by Johnson & Anderson, Inc. Under the terms of these documents the engineers, Johnson & Anderson, Inc., had broad au-

thority to act as the city's representative at the working site. The engineer had general supervision and direction over work and the authority to stop work whenever necessary to insure the proper execution of the contract. They had the right to order the discharge of any contractor's employees who were incompetent or who refused or neglected to obey the direction of the engineer in anything relating to the work.

The documents contemplated the danger of gas and provided means of ventilation *except where other methods were approved by the engineer*. The contractor was directed to employ proper and approved means of detecting gas. There was testimony, although disputed, that gas had been present in the shaft, as well as sand and water, when this portion of the project was temporarily abandoned in 1960.

As stated in *Associated Engineers, Inc.* v. *Job* (CA 8, 1966), 370 F2d 633, 645:

"We do not underestimate the difficulty and perhaps the closeness of this issue. The contract language is not so clear as it might be. Perhaps it would have been helpful had the record contained evidence of the manner in which these REA form contracts in the past have been construed by these and other parties. In the absence of evidence of that kind, we are reduced to linguistic analysis with some assistance from cases construing similar agreements.

"We feel that the engineer, Associated, in agreeing to supervise the construction of the project, undertook more than an obligation to assure that the end product conformed to specifications. It was to see that construction was 'expeditious and economical'; it was to supervise the 'manner' in which materials were incorporated; it was to determine whether the owner's interest required that any employee of the

contractor be removed; it could require the contractor to effect changes in the number of employees and in the number or kind of tools and equipment; and the 'manner of construction' of the project was subject to its 'inspection, tests and approval'.   *   *   *
"Each of these provisions imposes upon the engineer an obligation to do more than assure conformity to specification."

In our opinion it was not error for the trial court to submit to the jury the question of Johnson & Anderson's responsibility to perform reasonable inspections.

The other claims of error raised by the appellants involve the submission of issues to the jury and the court's instructions regarding those issues. Due to our foregoing rulings, these questions do not require discussion.

Plaintiff also filed a cross-appeal claiming that the trial court erred by not computing interest on the judgment from July, 1962, the date of the filing of the complaint (declaration), in accordance with CLS 1961, § 600.6013, as amended by PA 1965, No 240 (Stat Ann 1968 Cum Supp § 27A.6013). This specific issue has been ruled upon by this Court in *Swift* v. *Dodson* (1967), 6 Mich App 480 and *Ballog* v. *Knight Newspapers, Inc.* (1967), 7 Mich App 273, contrary to the plaintiff's position.

Judgment affirmed. No costs, neither party prevailing in its entirety.

LESINSKI, C. J., and FENLON, J., concurred.