546 P.2d 1189

Carlos **MONTANEZ**, Plaintiff-Appellant,

v.

D. L. **CASS**, Surviving Partner of Cass-Fitts Electric Company, a Partnership, Wolfson Oil Company, and New Mexico Electric Service Company, Defendants-Appellees,

Security Insurance Group, Intervenor-Appellee.

No. 1795.

Court of Appeals of New Mexico.

Dec. 2, 1975.

Certiorari Granted Jan. 16, 1976.

Warren F. Reynolds, C. Barry Crutchfield, Hobbs, for plaintiff-appellant.

Gerald A. Lewis, J. W. Neal, Neal & Neal, Hobbs, Don Maddox, Maddox, Maddox & Cox, Hobbs, for N. M. Electric Serv. Co.

Dewie B. Leach, Hobbs, for D. L. Cass.

William W. Bivins, Bivins & Weinbrenner, P. A., Las Cruces, for Wolfson Oil Co.

## OPINION

SUTIN, Judge.

This is an appeal by plaintiff from a summary judgment granted defendants. It arose out of an alleged claim for damages caused by the negligence of the defendants during the attempted removal of a secondary electric system by Gary Electric by

whom plaintiff was employed. We reverse.

### A. *Positions of Parties Defendant*

#### 1. *Wolfson Oil Company*

Defendant Wolfson Oil Company drilled an oil well several miles south of Eunice, New Mexico, close to the Texas state line. On February 8, 1969, the well came into production. Wolfson employed defendant Cass-Fitts Electric Company (Cass) to electrify the well via a secondary electric system. Wolfson rented two transformers from defendant New Mexico Electric Service Company (Electric Service). The well was plugged on October 24, 1970. Wolfson employed Gary Electric to take the secondary system down.

Wolfson contends:

(1) that plaintiff was contributorily negligent as a matter of law, and

(2) that Wolfson, as an employer of Gary Electric, was not liable to plaintiff while he was engaged in the performance of inherently dangerous contracted work.

#### 2. *Cass-Fitts Electric Company and New Mexico Electric Service Company*

Cass constructed the secondary system according to its own specifications and judgment. It furnished all electrical materials and hardware necessary to the construction of the secondary lines except two transformers, both of which it installed. The transformers and the power pole were furnished to Cass by Electric Service. Electric Service had installed and maintained a neutral wire called a jumper, 42″ from the top of the pole, for lightning protection. It was a ground wire. The jumper and one primary wire were used to connect with the transformer. This made it impossible to hang the tranformers above the secondary crossarm and still have ground.

Cass and Electric Service contend:

(1) that plaintiff was contributorily negligent as a matter of law,

(2) that these defendants had no duty toward plaintiff which could have been breached, and

(3) that plaintiff's claim against Cass was barred by the statute of limitations.

### B. *Questions for Review*

We are confronted with three questions for review: (A) Was plaintiff guilty of contributory negligence as a matter of law? (B) Did each of the three defendants owe any duty to plaintiff? (C) Did the statute of limitations bar plaintiff's claim against Cass?

(A) *An issue of fact exists as to plaintiff's contributory negligence.*

(1) *Facts Most Favorable to Plaintiff*

The evidence is conflicting. We set forth the facts most favorable to the plaintiff.

On November 30, 1974, at the time of the accident, plaintiff, twenty-four years of age with a tenth grade education, was employed by Gary Electric as an electrician's helper. For a year prior to the accident, plaintiff assisted electricians, operated a pole digger and set up power poles used for transmission of electricity. Most of the time he operated the pole digger to dig the hole for the poles and helped set up the poles. He had no prior experience with electrical work or electrician's work. He was just told to do what the electrician would tell him to do. At one time he had strung out wire on the secondary lines, but he did not connect the wire with the primary line because he didn't know how to climb a pole or how to make the connection. Two months before the accident he began to learn how to climb a pole. He climbed once under the supervision of an electrician and took a secondary line down.

On the morning of the accident, Mr. Gary told plaintiff and Joe Martinez, his employees, to go to the Wolfson oil well, take down the secondary lines, roll up the wire and bring it in. Gary told plaintiff all of the electric lines were dead and plaintiff believed the primary line was dead also.

The power pole involved in this case had an overall length of 35′. It was a little over 28′ from the ground to the top of the pole. A description of the upper portion of the pole from the west elevation is attached hereto. The primary lines were on top of the first crossarm. The secondary lines were between the first and second crossarms. The transformers were below the second crossarm. It was 17′6″ from the ground to the top of the transformers and 37″ from the transformers to the second crossarm. There were three cutouts which connect with the transformers. Two risers ascended from the left transformer, passed the second crossarm to the primary electric lines atop the first crossarm. The secondary lines were in close proximity to the risers. The primary lines, cutouts, and the risers were "hot" lines. The secondary lines were dead. There was nothing "hot" below the top of the transformer.

If anything was "hot", plaintiff testified he would not have climbed the pole because he had never experienced a "hot" line.

Before climbing, plaintiff knew how the "primary" could be disconnected, but he did not actually notice that clamps were still tied to the hot line. He did not look up to see, but even if he had looked he could not tell whether the lines had electricity in them.

All that plaintiff remembers is that he was climbing the pole. He intended to loosen the three bolts for the secondary lines to cause the whole line to fall down. Martinez testified that plaintiff climbed to the top of the transformers. He was standing with his right foot on the south transformer, his left foot on the north transformer, and his right arm around the pole. As plaintiff attempted to raise his right leg over the cutout at the second crossarm, his left foot slipped and plaintiff fell into the center cutout, and then to the ground.

(2) *Law on Summary Judgment*

We do not repeat again by citation of authority all of the rules by which summary judgment is adjudicated.

We do not try an issue of fact. We only determine whether there is an issue of fact.

■ Summary disposition of negligence cases cannot be successful on appeal except in the clearest of cases, i. e., where we cannot give the party opposing the motion the benefit of all reasonable doubts in determining whether a genuine issue of material fact exists. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972).

(3) *A genuine issue of material fact exists*

■ We differ on this Court on one question: Did the failure of plaintiff to look up to the top of the pole from the ground before climbing constitute contributory negligence as a matter of law? The answer is "No!"

■ Plaintiff testified that even if he had looked from the ground before climbing the pole he could not tell whether the lines were electrified. Furthermore, his employer told him that the lines were dead. He had a right to rely upon the truth of that statement. This evidence is sufficient to establish a genuine issue of material fact. *Crespin v. Albuquerque Gas & Electric Co.,* 39 N.M. 473, 50 P.2d 259 (1935); *Wood v. Southwestern Public Service Company,* 80 N.M. 164, 452 P.2d 692 (Ct. App.1969).

Defendants cited no authority to support their positions. They seek to distinguish *Crespin.* We disagree. In *Crespin,* plaintiff testified that he had been informed that the current in the electric wire had been turned off. He picked up the electric wire *without thinking* even though he knew that the line carried a heavy load of electricity. The Supreme Court held that plaintiff was not contributorily negligent as a matter of law.

The dispute on this Court arises over our interpretation of *Wood.* Defendants did not rely on this case. In *Wood,* decedent, sixteen years of age, lived in a trailer beneath a high voltage line. At night, during installation of a metal television antenna, the pole, 28′ long, was raised, and it

came into contact with the high voltage line. A friend of decedent, assisting him, testified that decedent knew that if he struck a metal object against an electric line, he would be shocked; that decedent knew there were some overhead power lines, but, in the dark, he could not judge the height; that he looked to see if the pole would clear the lines, but it did not. There was no claim and no evidence that decedent thought the line was not carrying an electric current. The trial court found decedent contributorily negligent as a matter of law. This Court affirmed even though decedent had not considered whether this particular electric line was dangerous.

*Crespin* was distinguished in *Wood* because Crespin had been told that the current had been turned off. Plaintiff in the instant case had been told the same thing. In *Crespin,* plaintiff picked up the wire "without thinking". In the instant case, plaintiff climbed the pole "without looking" from the ground. This is a distinction without a difference because both plaintiffs were told the line was dead. By this distinguishing fact, plaintiff, Montanez, escapes the harsh rule set forth in *Wood.* See, *Vanden Bosch v. Consumers Power Company,* 56 Mich.App. 543, 224 N.W.2d 900 (1974).

We interpret *Wood* to mean that decedent voluntarily exposed himself to a known danger. This is an essential ingredient of contributory negligence. *Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1971); *McMullen v. Ursuline Order of Sisters,* 56 N.M. 570, 246 P.2d 1052 (1952). In the instant case, plaintiff, not knowing of the danger involved, did not voluntarily expose himself to any danger.

*Wood* falls within a separate category in the field of electrified wire cases. This field involves liability for injury or death resulting when some object is manually brought into contact with an electric wire. Annot., 69 A.L.R.2d 9, 12–14. " . . . [T]here is little or no unity in the courts' holding in [this area of] electrical shock

cases but each case must rest more or less on its own facts. However, a reading of the later cases seems to show a trend that the courts are becoming more prone to let such cases go to the jury." *Phelps v. Magnavox Company of Tennessee, Inc.,* 62 Tenn.App. 578, 466 S.W.2d 226, 229 (1970).

If our interpretation of *Wood* is wrong, we decline to follow it.

26 Am.Jur.2d, Electricity, Gas, and Steam, § 96, states the universal rule applicable to our case.

The general rule, supported by the decisions of the courts in all jurisdictions in which the point has been considered, is that in the absence of proof that one injured as a result of his intentional bodily contact with an electrified wire knew, or in the exercise of ordinary care should have known, that the particular wire was dangerous, the question of his contributory negligence in so contacting the wire is for the jury. . . .

*Crespin* is cited within this general rule in Annot., Adult's intentional bodily contact with electrified wire as contributory negligence, 34 A.L.R.2d 98. This rule is followed in other cases cited infra under the "inherent danger" doctrine.

■ We hold that plaintiff's contributory negligence was a genuine issue of material fact for the jury. The trial court in granting summary judgment on this issue committed reversible error.

(B) *Each defendant owed plaintiff a legal duty to exercise ordinary care not to injure plaintiff.*

■ Each of the defendants claim that it is not liable for negligence because it did not owe plaintiff a duty to exercise ordinary care. Whether such a duty existed is a pure question of law for this Court to determine. *Southern Union Gas Co. v. Briner Rust Proofing Co.,* 65 N.M. 32, 331 P.2d 531 (1958).

For purposes of summary judgment, we adopt plaintiff's contention that each de-

fendant owed plaintiff a duty to exercise ordinary care.

### (1) *Wolfson owed plaintiff a duty to exercise ordinary care.*

Wolfson contends that it owed no duty to plaintiff because he was an employee of Gary Electric, an independent contractor.

■ When Wolfson delegated to Cass the installation of the secondary system, Wolfson assumed full responsibility for the negligent acts of Cass during the installation, which negligent acts remained after the work was finished. *Pendergrass v. Lovelace,* 57 N.M. 661, 262 P.2d 231 (1953).

■ The traditional rule is that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *Scott v. Murphy Corporation,* 79 N.M. 697, 448 P.2d 803 (1968). An exception to this traditional rule arises when the independent contractor is engaged in the performance of inherently dangerous work. *Pendergrass,* supra; Prosser, Law of Torts, 4th ed., p. 472 (1971). The employer is liable to a "third" person for physical harm caused by the independent contractor.

The reason for the exception to the traditional rule is that "third" persons placed in the area of inherent danger are protected as a matter of public policy. In *Parsons v. Amerada Hess Corporation,* 422 F.2d 610 (10th Cir. 1970), the Court said:

> The reason for this exception to the general rule of nonliability of an employer for the negligence of his independent contractor seems to be that the duty of due care owing to *third persons* in the performance of extrahazardous work, should, *as a matter of public policy,* be nondelegable. And this is so even though the employer is at pains to select a competent contractor and retains no control over the manner or the means of the performance of the contracted work. [Emphasis added]. 422 F.2d at 612.

Public policy demands that "third" persons who are injured during the performance of inherently dangerous work must be protected from the strength of the judicially created entity called "employer-independent contractor" relationship. Prosser, supra, at 471.

Public policy also demands that one who labors for an independent contractor in the performance of inherently dangerous work is a "third" person who should be protected. The inherently dangerous concept should not disappear merely because the "third" person becomes an employee.

It is absurd that any refinement of reasoning about the concept of liability arising out of inherently dangerous work should be permitted to obstruct the public policy or natural justice of a rule which created a duty to a "third" person then reverse itself, and deny this duty to a "third" person called an "employee" of an independent contractor.

This is especially true where the negligence of the employer exists via another independent contractor whose negligence caused the injuries to the employee. In this situation, the employer is negligent. In establishing a contrary rule, some courts have overlooked this important fact as well as the public policy and natural justice of the "inherent danger" doctrine.

Wolfson relies solely on *Parsons,* supra. The Court said:

> *Until, therefore, New Mexico has spoken more explicitly to our subject,* we must conclude that an employee of an independent contractor is not within the class of *third persons* to whom the employer of the independent contractor owes the nondelegable duty of due care while such employee is engaged in the performance of inherently dangerous contracted work. [Emphasis added]. 422 F.2d at 614.

In 1973, the same Court declared that New Mexico had not yet explicitly stated its position on this subject. *Madrid v. Mine Safety Appliance Company,* 486 F.2d 856 (10th Cir. 1973). We disagree.

It was explicitly stated in *DeArman v. Popps,* 75 N.M. 39, 400 P.2d 215 (1965), that an employee of an independent contractor is within the protected class of "third persons" pursuant to Restatement of Torts, 2d, § 414.

Section 414 reads:

One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm *to others,* for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. [Emphasis added].

The words "to others" include an "employee of an independent contractor".

We now explicitly state that this rule is applicable when the performance of the contracted work is inherently dangerous under § 427. It reads as follows:

One who employs an independent contractor to do work involving a special danger *to others* which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm *to such others* by the contractor's failure to take reasonable precautions against such danger. [Emphasis added].

Under this section, Wolfson owed a duty to plaintiff.

In *Vannoy v. City of Warren,* 15 Mich. App. 158, 166 N.W.2d 486, 489 (1969), the court said:

A distinction . . . based upon the legal designation of injured parties, e. g. "third" persons or "others" as opposed to employees of independent contractors, violates the absolute character of the duty . . . .

We agree.

We conclude that § 416 explicitly states that the meaning of the words "to others" includes "the employee of the independent contractor". It has long been the policy of our courts to follow in the footsteps of the Restatement of Torts, 2d.

Other courts have held to this interpretation. *Woolen v. Aerojet General Corporation,* 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P.2d 708 (1962); *Giarranto v. Weitz Company,* 259 Iowa 1282, 147 N.W.2d 824 (1967); *Hagberg v. City of Sioux Falls,* 281 F.Supp. 460 (D.C.S.D.1968); *Lindler v. District of Columbia,* 164 U.S.App.D.C. 35, 502 F.2d 495 (1974).

The basis upon which some courts have held that the employee of an independent contractor is not a "third" person, or does not fall within the words "to others", grows out of another judicially created theory. This is called "respondeat superior".

This theory makes the independent contractor and his employees servants of the employer. The independent contractor carries workmen's compensation insurance for his employees and the employees are therefore protected against injuries. To hold the employer liable would subject the employer to a greater liability than he would have if he had utilized his own employees on that particular work. *King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W. 2d 659 (Ky.1973), cert. denied 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236; *Welker v. Kennecott Copper Company,* 1 Ariz.App. 395, 403 P.2d 330 (1965). In Pennsylvania, the sole and exclusive remedy given an employee is workmen's compensation. *Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 189 A.2d 271 (1963).

This conflict of authority arises because Tentative Draft #7 of the Restatement of Torts, 2d, contained a special note to Chapter 15. It stated that employees of an independent contractor were not included in the family of sections which are found in Chapter 15; that workmen's recovery is now regulated by workmen's compensation; that although this language was not adopted, it is persuasive; that the comments noted in the sections indicate that employees of independent contractors are not among those to whom the employer owed a duty. *King,* supra; *Welker,* supra.

As pointed out supra, other courts have not followed this rule.

■ Furthermore, the rule stated above is not applicable in New Mexico. The Workmen's Compensation Act is not the exclusive remedy of the employee. An employee has a claim against a third party. *DeArman,* supra; *Kandelin v. Lee Moor Contracting Co.,* 37 N.M. 479, 24 P.2d 731 (1933); *Hockett v. Chapman,* 69 N.M. 324, 366 P.2d 850 (1961); *Castro v. Bass,* 74 N.M. 254, 392 P.2d 668 (1964).

As shown supra, Restatement of Torts, 2d Chapter 15, entitled "Liability of an Employer of an Independent Contractor", the words "to others" includes in its meaning, an employee of an independent contractor.

■ Based upon Restatement of Torts, 2d, supra, public policy, and long sustenance of the rule, we hold that where an employer engages an independent contractor to perform inherently dangerous work, the employer owes a duty to an employee of the independent contractor to exercise due care and to provide the employee with a reasonably safe place in which to work. *Chicago Economic Fuel Gas Company v. Myers,* 168 Ill. 139, 48 N.E. 66 (1897); *Watson v. Black Mountain Ry. Co.,* 164 N.C. 176, 80 S.E. 175 (1913); *Besner v. Central Trust Company,* 230 N.Y. 357, 130 N.E. 577, 23 A.L.R. 1081 (1921); *Mallory v. Louisiana Pure Ice & Supply Co.,* 320 Mo. 95, 6 S.W.2d 617 (1928); *International Harvester Co. v. Sartain,* 32 Tenn.App. 425, 222 S.W.2d 854 (1948); *King v. Morrison Motor Freight Lines,* 111 Ohio App. 172, 171 N.E.2d 173 (1959); *Vannoy v. City of Warren,* supra; *McDonald v. City of Oakland,* 255 Cal.App.2d 816, 63 Cal.Rptr. 593 (1967); *Van Arsdale v. Hollinger,* 68 Cal. 2d 245, 66 Cal.Rptr. 20, 437 P.2d 508 (1968); *Phelps v. Magnavox Company of Tennessee,* 497 S.W.2d 898 (Tenn.App.1972); *Wilhelm v. Detroit Edison Company,* 56 Mich.App. 116, 224 N.W.2d 289 (1974); *Lindler,* supra; *Kukuruza v. General Electric,* 510 F.2d 1208 (1st Cir. 1975); Annot., 23 A.L.R. 1084 at 1129.

Wolfson owed a duty to plaintiff to exercise due care. The trial court erroneously granted Wolfson summary judgment.

(2) *Cass and Electric Service owed plaintiff a duty to exercise ordinary care.*

(a) *Electric Service*

Electric Service seems to contend that no duty exists because plaintiff, foreseeably upon the pole, was not exposed to a danger created by Electric Service, or by dangerous equipment belonging to Electric Service; that if Cass negligently installed the secondary system, Electric Service owed no duty to plaintiff, the employee of an independent contractor who was present for the benefit of Wolfson; that it had no duty to inspect the equipment of Cass upon its pole. We disagree.

Electric Service has cited no authority to support its position.

■ Electric Service, in carrying on the business of selling and conveying a dangerous electric current over its wires to consumers, has a duty to protect those likely to come in contact therewith commensurate with the dangerous character of, and consistent with the practical operation of, its business. That duty extended to the erection, maintenance and operation of its apparatus, and likewise to its. inspection thereof to discover defects. *Mares v. New Mexico Public Service Co.,* 42 N.M. 473, 82 P.2d 257 (1938); *Southwestern Pub. S. Co. v. Artesia Alfalfa Ass'n,* 67 N.M. 108, 353 P.2d 62 (1960); *Crespin,* supra.

■ Wolfson and Electric Service occupied the single power pole. The upper portion of the pole was constructed and used by Electric Service for transmission of current. The lower portion was constructed by Cass in such manner as to cause the secondary lines to intermingle with the power lines of Electric Service as hereinabove described. In addition, Electric Service had, prior to plaintiff's injuries, installed a jumper wire connected with a live wire that affected the proper placement of its transformers.

Electric Service's activity in this regard contributed to the inherently dangerous condition of the power pole. It cannot

escape its duty to inspect its pole or not to expose another to the dangers created.

This duty is not restricted to a consumer of electricity. It extends to anyone likely to come in contact with its power lines. This includes plaintiff who had a right to be in the upper portion of the power pole. Electric Service owed plaintiff a duty to exercise ordinary care.

The trial court erroneously granted Electric Service summary judgment.

(b) *Cass*

■ Cass claims that it owed no duty to plaintiff because its work had been completed and accepted by Wolfson. This claim has no merit because its work was imminently dangerous to others. *Wood v. Sloan,* 20 N.M. 127, 148 P. 507, L.R.A. 1915E, 766 (1915); *Baker v. Fryar,* 77 N.M. 257, 421 P.2d 784 (1966); *Rousch v. Johnson,* 139 W.Va. 607, 80 S.E.2d 857 (1954).

The trial court erroneously granted Cass summary judgment.

(C) *Cass is not protected by statute of limitations.*

■ Cass completed construction of the secondary system October 19, 1966. Plaintiff was injured November 30, 1970, and filed his action November 26, 1973. More than four years lapsed between the construction date and the accident date. Cass never returned to the premises following completion of the job. Neither did it exercise any control over the premises after completion, and after the work was received and accepted by Wolfson.

Where the facts are not disputed, the application of the statute of limitations as a bar to the action is one of law for the court. *Mantz v. Follingstad,* 84 N.M. 473, 505 P.2d 68 (Ct.App.1972).

Cass takes the position that plaintiff's claim is barred by that portion of the statute of limitations under § 23–1–8, N.M.S.A. 1953 (Vol. 5) which reads:

. . . for an injury to the person or reputation of any person, within three ■ years.

The action for personal injuries may be brought within three years after the cause of action accrues. Section 23–1–1, N.M. S.A.1953 (Vol. 5).

This is a matter of first impression in New Mexico.

The rule is universal that in cases of injuries to the person arising out of the wrongful act of another, the cause of action accrues at, and the statute begins to run from, the time of the injury even though defendant's negligent act which caused the injury occurred a long time prior thereto. 54 C.J.S. Limitations of Actions § 174(a); 51 Am.Jur.2d Limitation of Actions, §§ 135, 136. No citation of cases is necessary.

The wrongful act simply creates the condition. It does not cause an action to accrue. No action accrues until someone is injured.

Cass relies on *Roybal v. White,* 72 N.M. 285, 383 P.2d 250 (1963), a medical malpractice case. The Court held that the accrual date was "the time of the wrongful act causing the injury." This statement may be misleading. The wrongful act and the injury sued for occurred at the same time. It was immaterial whether the statute of limitations ran from the wrongful act or the injury.

It has been held that a cause of action accrues at that point of time in negligence cases, apart from personal injuries, when an injury to the plaintiff occurs from the prior negligent act of another. *Chisholm v. Scott,* 86 N.M. 707, 526 P.2d 1300 (Ct. App.1974); *Spurlin v. Paul Brown Agency, Inc.,* 80 N.M. 306, 454 P.2d 963 (1969). The same rule applies in personal injury actions.

In the instant case, the cause of action accrued on November 30, 1970, the day plaintiff was injured. The action was filed November 23, 1973, just within the three-year period. Cass is not protected by the statute of limitations.

Reversed.

It is so ordered.

LOPEZ, J., concurs.

HERNANDEZ, J., dissents.

Customer's installation on
NMESCo. primary line pole.
Service to customer lease
was discontinued on 11-14-70.
The meter was removed and the
customer's disconnects were
opened on 11-14-70.
The 15 KVA transformer is
property of NMESCo. - leased
to and installed by the
customer.

15 KVA

15 KVA

97"

17'-6"

Heigth above Ground

WEST ELEVATION

Measurements by L. Bayes 12-7-70
Drawn By WLS 12-9-70

HERNANDEZ, Judge (dissenting).

I respectfully dissent. In my opinion only one inference may be drawn from the following facts, all of which come from plaintiff's own lips at the time he was deposed. Plaintiff was guilty of contributory negligence as a matter of law when he climbed the pole without first looking to see if the "primary line" was or was not disconnected:

(1) plaintiff worked as an electrician's helper for approximately one year;

(2) his work during that period of time was mainly to assist in "hooking up oilwells" for electrical service;

(3) he had installed "secondary lines" to oilwells at various locations;

(4) included in the equipment carried in the truck on the day of the accident were insulated gloves and a "hot line stick" that could extend to a length of about 30 feet;

(5) he noticed that the "cutouts" were disconnected and therefore knew that the "secondary line" would be dead;

(6) he knew that the "primary line" carried high voltage and how to disconnect it with the "hotline stick";

(7) he did not look to see if the "primary line" was not disconnected;

(8) he knew that if the "primary line" was not disconnected the "risers" would be "hot"; and

(9) he was not wearing the insulated gloves at the time of the accident.

The doctrine of contributory negligence is founded upon the principle that an individual is never relieved from the duty of exercising reasonable care for his own safety. That is to say he cannot thrust all of the responsibility for his safety upon others. This is precisely what plaintiff did when he climbed that pole without first looking to see if the "primary line" was or was not disconnected. See *Boyce v. Brewington,* 49 N.M. 107, 158 P.2d 124 (1945); *Wood v. Southwestern Public Service Company,* supra.