827 P.2d 102

**Lorenzo SAIZ, as Personal Representative of the Estate of Jerry Saiz, Deceased, Petitioner,**

v.

**BELEN SCHOOL DISTRICT, a governmental entity, Respondent.**

**No. 19124.**

Supreme Court of New Mexico.

Feb. 21, 1992.

James A. Thompson, Alameda, for petitioner.

William H. Carpenter, Michael B. Browde, Albuquerque, for amicus curiae, NM Trial Lawyers Ass'n.

Kevin M. Brown, Albuquerque, for respondent.

Paul M. Schneider, Albuquerque, for amicus curiae Risk Management Div. of the General Services Dept. of State of N.M.

## OPINION

RANSOM, Chief Justice.

This is a wrongful death action brought against the Belen School District by the personal representative of a young boy who was electrocuted by a high-voltage lighting system at a high school football game. The accident occurred about twenty-five years after the system was installed. Plaintiff was awarded only a judgment against the school district for its proportionate fault in negligent maintenance subsequent to the installation of the system. That judgment is not at issue and remains undisturbed.

We issued a writ of certiorari to the court of appeals to decide whether, additionally, the school district can be held responsible for the faulty lighting system as initially installed and inspected by independent contractors.[1] The court of appeals had affirmed the trial court's ruling against the vesting of such responsibility in the school district. We conclude, to the contrary, that the school district is directly responsible for injuries that were caused by the absence of precautions required in the face of peculiar risks of harm created by locating a high-voltage electrical supply line in an area of public accommodation. However, responsibility is based not upon vicarious liability, but on strict liability for which the school district is granted immunity under the Tort Claims Act, NMSA 1978, Sections 41–4–1 to –27 (Repl.Pamp.1989).[2]

---

1. Leave to file amicus briefs was granted to the New Mexico Trial Lawyers Association, aligned with Saiz, and to the Risk Management Division of the General Services Department of the State of New Mexico, aligned with the school district.

2. We also note in the course of our analysis that there is no time bar to the action brought against the school district and that the personal representative preserved the principal claim of error addressed by us. We reach the dispositive question of immunity raised under the Tort Claims Act only because of the manner in which we first find that liability is otherwise precluded by neither the interposition of independent con-

Therefore, we affirm on a rationale different than was employed by the trial court or the court of appeals.

*Facts.* This case has its origin in a series of contracts made in 1964. At that time the Belen School District contracted with its chief architect, Kruger, Lake & Henderson, to provide outdoor lighting for its high school football field. Dean Powell, an electrical engineer, was engaged to design the system, and the school district contracted with Yearout Electric Company to build it. As installed, the 250–ampere, 480–volt system consisted of a series of wooden light poles serviced by underground electrical cable. Some of the poles were installed directly in front of bleachers. In about 1973, in order to keep spectators off the playing field, the school district built a metal cyclone fence in front of the bleachers and close to some of the light poles.

On September 2, 1988, thirteen-year-old Jerry Saiz attended a night football game at the high school field. While standing by one of the light poles at halftime, he touched both the metal electrical conduit running up one of the poles and the metal cyclone fence. He was electrocuted and died a few minutes later. The insulation around the buried cable had been damaged by the sharp metal edge of the conduit, and the metal conduit running up the pole was electrified by the high-voltage current. The failure to install a smooth plastic bushing, required under the state electrical code, where the buried insulated cable entered the metal conduit, had caused an electrical short and the electrocution of Jerry Saiz.

*Proceedings.* Lorenzo Saiz, as personal representative of the estate of Jerry Saiz, brought suit against the school district under the Tort Claims Act, alleging the school district was negligent in the installation and maintenance of the electrical system. Saiz did not sue the architect, the design engineer, or the electrical contractor. His action against these parties was precluded by NMSA 1978, Section 37–1–27 (Repl.Pamp.1990) (suits against builders tractors nor the other issues preserved, briefed, and other parties furnishing construction services are barred after ten years from date of project's completion).

In its answer to the complaint, the school district raised as an affirmative defense the fault of others. Who was at fault, or how, was not specified. At trial the school district sought to lay off damages against various nonparties, among whom were both the electrical contractor who had failed to install the plastic bushing and the architect for his negligent supervision and inspection of the system. Saiz focused his attention on evidence suggesting the school district was negligent in the installation of the cyclone fence, as well as on evidence indicating the school district should have been aware the lighting system was faulty. For a number of years the school district had experienced serious problems with the lighting system and had made various attempts to correct those problems. Saiz claimed at trial that the school district was negligent in failing to test the system properly and in failing to detect the short circuit that caused the electrocution.

Upon close of the evidence, Saiz tendered a uniform jury instruction on agency, SCRA 1986, 13–405, alleging that the school district, as the employer, was liable for the wrongful acts of various individuals including the electrical contractor. The school district tendered SCRA 1986, 13–404, an instruction that ultimately was given, reciting the general principle of law that an employer is not responsible for the acts of an independent contractor. In response, Saiz tendered an instruction on a common-law exception to nonliability. Citing *Montanez v. Cass*, 89 N.M. 32, 546 P.2d 1189 (Ct.App.1975), *aff'd in part and rev'd in part on other grounds sub nom. New Mexico Electric Service Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976), Saiz claimed that an employer is responsible to third persons for harm caused by the negligence of an independent contractor engaged in an inherently dangerous activity. The trial court refused the latter instruction for the reason that the exception did and argued.

not apply in this case.[3] The jury was instructed that, should it find the electrical contractor violated the state electrical code in omitting the plastic bushing, it was to find him negligent as a matter of law.

Thus instructed, the jury returned a verdict for the plaintiff and allocated fault as follows: to the electrical contractor, sixty percent; to the architect, twenty-five percent; to the school district, fifteen percent; to the design engineer and the deceased, zero percent each. The judgment entered against the school district, $169,902.73, represented fifteen percent of the total damages ($1,250,000.00), less a voluntary payment for hospital and burial expenses previously paid by the school district's insurance carrier.

*Disposition below.* Saiz filed a posttrial motion under SCRA 1986, 1–059(E), to amend the judgment and to impose joint and several liability against the school district under two theories: (1) for vicarious liability pursuant to NMSA 1978, Section 41–3A–1(C)(2) (Repl.Pamp.1989), for the acts of its independent contractors; and (2) under the "public policy" exception to several liability provided in Section 41–3A–1(C)(4).[4] The trial court scheduled the hearing for posttrial motions beyond the thirty-day time limit to appeal the judgment, *see* SCRA 1986, 12–201(A) and (D), and Saiz timely filed a notice of appeal. The motions were not ruled upon. Saiz pursued in the court of appeals his argument that the independent contractors were engaged in inherently dangerous work and that the school district consequently was jointly and severally liable for the negligence of the contractor and architect. The court of appeals affirmed the judgment by an unpublished opinion, stating that the school district cannot be held vicariously liable for acts of an independent contractor performed twenty-five years earlier. The court also stated that because joint and several liability applies only in certain limited situations, the claim must be raised in the plaintiff's pleadings.

■ *Inherently dangerous activities and nondelegable duties.* As a general rule, an employer of an independent contractor is not responsible for the negligence of the contractor or his employees. *Scott v. Murphy Corp.,* 79 N.M. 697, 448 P.2d 803 (1968); *Restatement (Second) of Torts* § 409 (1964) [hereinafter *Restatement* ]. The absence of a right of control over the manner in which the work is to be done is the most commonly accepted criterion for distinguishing independent contractors from employees for whose negligence the employer is vicariously liable. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 71, at 509 (5th ed. 1984) [hereinafter *Prosser & Keeton* ]; *see also* SCRA 1986, 13–403 (Uniform Jury Instruction: definition of employee-employer); SCRA 1986, 13–404 (definition of independent contractor). The general rule has no application where the employer has nondelegable duties (1) arising out of some relation toward the public or the particular plaintiff (*e.g.,* duty of lessor to lessee), or (2) because of work that is specially, peculiarly, or inherently dangerous.[5] *See Restatement* ch. 15, Topic 2, at 394–423.

---

**3.** We recognize that, in any event, the exception did not give rise to a fact issue for the jury, but we later discuss the effect of the tender in raising an issue of law.

**4.** In 1987 the New Mexico Legislature adopted the doctrine of several liability. Nonetheless, liability remained joint and several for certain enumerated exceptions:

(1) to any person or persons who acted with the intention of inflicting injury or damage;

(2) to any persons whose relationship to each other would make one person vicariously liable for the acts of the other, but only to that portion of the total liability attributed to those persons;

(3) to any persons strictly liable for the manufacture and sale of a defective product, but only to that portion of the total liability attributed to those persons; or

(4) to situations not covered by any of the foregoing and having a sound basis in public policy.

NMSA 1978, § 41–3A–1(C) (Repl.Pamp.1989).

**5.** We do not reach the question whether liability under either of these theories falls within the immunity afforded governmental entities by the exclusion of independent contractors from the definition of public employees for whose torts the entity's immunity is waived. *See* footnote 14, *infra.*

Only the latter type of duty has been raised for consideration here.

The *Restatement* acknowledges that rules regarding liability of the employer under nondelegable duties tend to overlap and that it may be premature to enunciate any general principles. *See id.* at 394–95. Understandably, confusion and uncertainty exist, for there has been a tendency for courts (this one included) to rely on several distinctive theories to justify their decisions, to characterize the employer's nondelegable duties as exceptions to the general rule, and to use language from these "exceptions" more or less indiscriminately. In this opinion we focus on the nature of nondelegable duties and of liability for inherently dangerous activities. In relation to independent contractors, in prior opinions we have addressed "peculiar risks" and "inherently dangerous activities" in only a small number of cases as discussed below, and then not in detail and not in a situation where it made any difference to analyze the nature of a nondelegable duty. Today we address whether a nondelegable duty gives rise to direct strict liability for the absence of required precautions or whether it gives rise to vicarious liability for the negligence of the independent contractor. The question is whether liability is dependent upon an *employer's breach of duty* to ensure the taking of precautions made reasonably necessary as a matter of law, or whether liability is imputed to the employer by reason of *another's breach of duty* to exercise ordinary care.

*-Nondelegable duty.* In *Pendergrass v. Lovelace,* 57 N.M. 661, 262 P.2d 231 (1953), a cropdusting case involving liability for the negligent spraying of an herbicide, this Court stated that "[w]ork that is intrinisically and inherently dangerous in performance is not delegable so as to escape liability." *Id.* at 663, 262 P.2d at 232. The Court next addressed these concepts in *Budagher v. Amrep Corp.,* 97 N.M. 116, 637 P.2d 547 (1981), a case involving the collec-

tion and discharge of surface waters. The Court referred to several exceptions to the general rule of nonliability, including both the "peculiar risk" (§ 416) and the "special danger" (§ 427) exceptions of the *Restatement.*[6] *Budagher,* 97 N.M. at 119–20, 637 P.2d at 550–51. In deciding that the defendant landowner owed a nondelegable duty to adjoining property owners to ensure that the volume and rate of the natural flow of surface water remained unchanged, the Court recognized the applicability both of Section 416 and Section 427 of the *Restatement,* but explained only the former in relation to the facts of the case. The Court stated that the construction of certain dams and the location of drainage culverts "created a peculiar risk of harm (*i.e.,* flooding) to Budaghers' property which might have been anticipated [by defendant] as a direct or probable consequence of the construction of the dams, had reasonable care been omitted." *Id.* at 120, 637 P.2d at 551.

Section 416 of the *Restatement* pertains to one who employs an independent contractor to do work that the employer should recognize as likely to create a peculiar risk of physical harm to others unless special precautions are taken. The employer is subject to liability for physical harm caused by the failure of the independent contractor to exercise reasonable care to take the necessary precautions, even though the employer has provided, in the contract or otherwise, that such precautions be taken. Section 427 of the *Restatement* pertains to one who employs an independent contractor to do work involving a special danger to others, that the employer knows or has reason to know to be inherent in or normal to the work, or that the employer contemplates or has reason to contemplate when making the contract. The employer is subject to liability for physical harm caused by the independent contractor's failure to take reasonable precautions against the danger.[7]

As the *Restatement* recognizes, these two rules represent different formulations

---

**6.** The activity is inherently dangerous because it involves a "peculiar risk" in the absence of special precautions, or because it involves a "special danger" inherent in the work. We note that the *Restatement* uses the two phrases "peculiar

risk" and "special danger" almost interchangeably. *See Restatement* §§ 413 cmt. b, 427 cmt. a. We will treat them as being equivalent.

**7.** We treat as equivalent the concepts of "reasonable care to take special precautions" and "rea-

of the same principle: the employer remains liable for injuries resulting from dangers the employer should have anticipated at the time the employer entered into the contract. *Id.* § 416 cmt. a. Both of these rules can be traced to the leading English case of *Bower v. Peate,* [1876] 1 Q.B. 321, in which the walls and foundation of the plaintiff's house were undermined by excavation on the adjoining property. The explanation given by the court, in holding the adjacent landowner responsible for harm caused by the absence of adequate preventative measures, is as informative as any we have read:

> [A] man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing some one else * * * to do what is necessary to prevent the act he has ordered to be done from becoming wrongful.

*Id.* at 326. We think it important that in *Bower* the employer was directly responsible to do what was necessary to prevent injurious consequences. Vicarious liability for the negligence of an independent contractor, as for an employee, was not the rationale:

> [T]here is * * * good ground for holding [the employer] liable for injury caused by an act certain to be attended with injurious consequences if such consequences are not in fact prevented, *no matter through whose default* the omission to take the necessary measures for such prevention may arise.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> * * * The agent may no doubt be responsible, but the responsibility of the principal is none the less.

*Id.* at 327 (emphasis added).

■ We hold that one who employs an independent contractor to do work that the

employer as a matter of law should recognize as likely to create a peculiar risk of physical harm to others unless reasonable precautions are taken is liable for physical harm to others caused by an absence of those precautions. The employer cannot delegate the responsibility for taking the precautions. As our previous cases have indicated, the employer has a nondelegable duty to ensure the precautions are taken. *See Pendergrass,* 57 N.M. at 663, 262 P.2d at 232; *Budagher,* 97 N.M. at 121, 637 P.2d at 551 (landowner has nondelegable duty with reference to surface waters and "[landowner's] negligence is established" once it is proved surface water was collected and then discharged in a greater volume or rate than normal). Thus, when an employer hires an independent contractor to do work that the law recognizes as likely to create a peculiar risk of harm, the employer is directly responsible if reasonable precautions are not taken against the risk. This liability is direct, not vicarious. Proof of liability or even negligence of the independent contractor is not an essential element of the employer's liability.

■ As we explain in our conclusion to this opinion, we reject any requirement apparent from Section 416 of the *Restatement* that liability of the employer is dependent upon failure of the independent contractor to exercise reasonable care. The *focus* is on the presence or absence of a necessary precaution, not on whether an independent contractor's failure to take the precaution may be excused or justified under a reasonably prudent person standard. The test of liability is the presence or absence of precautions that would be deemed reasonably necessary by one to whom knowledge of all the circumstances is attributed; and liability is dependent on neither the lack of care taken by the contractor nor the lack of care taken by the employer to ensure that the contractor takes necessary precautions.

■ We also believe that whether work is inherently dangerous is a question

---

sonable precautions against special dangers." These phrases both refer to precautions made reasonably necessary by a peculiar risk or a special danger.

of law, even though we recognize there may be gray areas requiring fact-finding. As discussed below, the court decides whether the established facts gives rise to an inherently dangerous activity. If so, the jury decides under the evidence and by expert and lay testimony: (1) what precautions would be deemed reasonably necessary by one to whom knowledge of all the circumstances is attributed, and (2) whether the absence of a necessary precaution was a proximate cause of injury. Because the precaution must be reasonable, liability for inherently dangerous activities is distinguished from absolute liability for abnormally dangerous or ultrahazardous activities as discussed below. There may be reasons for the jury also to decide and apportion fault among independent contractors and others, but if the only question is the liability of an employer for injury proximately caused by the absence of a necessary precaution against the peculiar risks of an inherently dangerous activity, fixing fault of the independent contractor is not required. The employer's liability for breach of a nondelegable duty is direct, not vicarious.

■ -*Peculiar risks.* By "peculiar risk" we mean a risk that is unusual or "not a normal, routine matter of customary human activity," *Restatement* § 413 cmt. b, and that is different from one to which persons commonly are subjected by ordinary forms of negligence. *Id.* § 416 cmt. d. This is not to suggest that the risk is one not to be expected from the type of work the contractor has been hired to perform. Quite to the contrary, the concept is concerned with "special risks" arising out of the work itself, its character, or manner of performance, against which a reasonable person would recognize the necessity of taking "special precautions." *Id.* § 413 cmt. b.

■ To recover for injury from a peculiar risk or special danger, a plaintiff need not show that some hazard was the inevitable consequence of performing the work, or that the hazard could not be eliminated by the exercise of reasonable care. *See id.* §§ 416 cmt. e, 427 cmt. b. Rather,

work is inherently or intrinsically dangerous because the commission of the work, either the work activity itself or the object sought to be attained, is very likely to cause harm if a reasonable precaution against the peculiar risk or special danger is not taken. *See Deitz v. Jackson,* 57 N.C.App. 275, 291 S.E.2d 282, 286 (1982). We emphasize that more than mere foreseeability of injury is required. The hazard must be substantial. That is, there must exist a strong probability that harm will result in the absence of reasonable precautions. *Cf. Florida Power & Light Co. v. Price,* 170 So.2d 293, 295 (Fla.1964) (holding that work is inherently dangerous if "of such a nature that in the ordinary course of events its performance would probably, and not merely possibly, cause injury if proper precautions were not taken").

■ Activities that are "inherently dangerous" represent an intermediate category of hazardous activity between those that are nonhazardous (or only slightly so), in which harm is merely a foreseeable consequence of negligence, and activities that are ultrahazardous, in which the potential for harm cannot be eliminated by the highest degree of care. We believe the high probability or relative certainty that harm will arise in the absence of reasonable precautions distinguishes this intermediate category.

It has been suggested that some courts have expanded the inherently dangerous activity doctrine so far as to leave little room for operation of the general rule that an employer is not liable for negligence of an independent contractor. *Prosser & Keeton* § 71, at 514 n. 60. For instance, the Supreme Court of Colorado has defined an inherently dangerous activity simply as an activity that "present[s] a foreseeable and significant risk of harm to others if not carefully carried out." *Western Stock Ctr., Inc. v. Sevit, Inc.,* 195 Colo. 372, 578 P.2d 1045, 1050 (1978) (en banc). As we have defined it, however, we do not think a nondelegable duty for inherently dangerous activities will swallow the general rule. The doctrine of nondelegable duty applies

only in cases in which, in the absence of reasonable precautions, a strong probability exists that harm will result from an unusual type of risk.

■■■■■ -*Abnormally dangerous activity distinguished.* Additionally, there is an important distinction to be drawn between the peculiar risk or inherently dangerous activity exception and other doctrines such as work that is "ultrahazardous" or "abnormally dangerous." Some confusion of terminology is readily apparent in the proceedings of this case. The doctrine of ultrahazardous activities (now "abnormally dangerous activities" under the *Restatement* [8]) imposes responsibility upon persons engaged in such activities for any resulting harm even though all reasonable precautions have been taken against the risk of harm the activity creates. *See Thigpen v. Skousen & Hise*, 64 N.M. 290, 292–94, 327 P.2d 802, 804–05 (1958). The doctrine applies to those situations where the risks involved cannot be eliminated by the exercise of reasonable care, or even the utmost care. *See id.* at 294, 327 P.2d at 805. Application of the ultrahazardous activity doctrine has been restricted in our decisions to the use of explosives in blasting. *E.g., Thigpen.*

■■■ -*Collateral negligence.* A corollary to the nondelegable duty doctrine in relation to peculiar risk or special danger is that an employer is not responsible for the "collateral" negligence of the independent contractor, meaning negligence collateral to the contemplated risk. *See Restatement* § 426.[9] This defense has been described as negligence in the operative detail of the work as distinguished from the general plan or result to be accomplished. *See id.* cmt. a. While this distinction sometimes can be drawn, it should not be regarded as a definitive test. Rather, the distinction is between negligence that is foreign to the contemplated risk of doing the work and negligence in failing to take precautions necessary to avoid the contemplated risk. *See id.* The employer's nondelegable duty runs only to a hazard associated with a peculiar risk or special danger the employer as a matter of law had reason to anticipate. It requires the employer to see that the contractor takes reasonable precautions to eliminate that risk. The employer definitely has the authority to control the manner in which the work is performed with reference to this danger or risk. In fact, the employer has the duty to control this aspect of the work, even the operative details if necessary, to ensure that reasonable precautions are taken. Similarly, to the extent a manufacturer is the ultimate party strictly liable for supply of a defective product, it is often stated that this is because the manufacturer is in a position to avoid defective products.

■■■ -*Existence of nondelegable duty is a question of law.* There is no clear con-

---

**8.** The *Restatement* has substituted "abnormally dangerous" for the term "ultrahazardous" used in the first edition. In some respects the definition of the new term is significantly different. *Compare Restatement (Second) of Torts* §§ 519–520 (1976) *with Restatement of Torts* §§ 519–520 (1938). For our purposes, however, it is important only to note that either concept involves a serious risk of harm that cannot be eliminated by adequate precautions—either the exercise of "reasonable care" or "utmost care" depending upon the present or earlier formulation of the rule. The principles expressed in the first and second editions of the *Restatement of Torts* are based upon the classic English case of *Rylands v. Fletcher,* [1861–73] All E.R. Rep. 1 (H.L.1868) (appeal taken from England), which itself involved the work of an independent contractor. This important case, and the incorporation of its principles into the *Restatement of Torts,* is discussed at some length in *Prosser & Keeton* Section 78. The ultrahazardous activity doctrine is, of course, another exception to the independent contractor rule. *See Restatement* § 427A.

**9.** That Section of the *Restatement* is as follows:

§ 426. Negligence Collateral to Risk of Doing the Work.

Except as stated in §§ 428 and 429, an employer of an independent contractor, unless he is himself negligent, is not liable for physical harm caused by any negligence of the contractor if

(a) the contractor's negligence consists solely in the improper manner in which he does the work, and

(b) it creates a risk of such harm which is not inherent in or normal to the work, and

(c) the employer had no reason to contemplate the contractor's negligence when the contract was made.

sensus on whether the applicability of the inherently dangerous activity doctrine is a question of law or fact. *See* James Lockhart, *Cause of Action Against Employer for Negligence of Independent Contractor Engaged in "Inherently Dangerous" Activity,* 11 Causes of Action 393, 415 (1986). In many cases the determination will be influenced by the particular circumstances under which work is performed as well as the nature of the work itself. For instance, in this case it is significant that the light pole and conduit were located in an area for spectators.

Judge Sutin, writing for the court of appeals in *Montanez v. Cass,* 89 N.M. 32, 546 P.2d 1189 (Ct.App.1975), *rev'd in part on other grounds sub nom. New Mexico Electric Service Co. v. Montanez,* 89 N.M. 278, 551 P.2d 634 (1976), stated that whether a nondelegable duty exists, because a contractor is engaged in an inherently dangerous activity, is a pure question of law. *Id.* at 36, 546 P.2d at 1193. Also, like a number of other courts, he explained the basis for the doctrine as the idea that third persons placed in an area of inherent danger should be protected as a matter of public policy. *Id.* at 37, 546 P.2d at 1194. We agree with these conclusions.

■■■ It is a well-recognized principle of tort law that whether a duty exists is a question of law for the court, involving legal precedent, statutes, and the recognition of society's interest in general security. The court's statement of duty is a policy determination that the obligation of the defendant is one to which the law will give recognition and effect. *See Ramirez v. Armstrong,* 100 N.M. 538, 541, 673 P.2d 822, 825 (1983). In this regard it should be remembered that the policy behind the law of torts does more than compensate victims—it encourages reasonable safeguards against the risk of harm. The determination by the court that an employer is under a nondelegable duty to ensure that reasonable precautions are taken against a peculiar risk is a decision that, in a situation with a strong probability of injury, the public interest in safety demands an increased regard for precautions.

■■■ *-High-voltage in an area of public accommodation.* Locating a high-voltage electrical supply line in an area of public accommodation creates a peculiar risk of physical harm. *Cf. Nationwide Mut. Ins. Co. v. Philadelphia Elec. Co.,* 443 F.Supp. 1140 (E.D.Pa.1977) (independent contractor's failure to insulate overhead power line at construction site creates peculiar risk of harm). It would seem beyond dispute that electricity has certain well-known inherent dangers. It gives no warning of its presence, and if amperage and voltage are sufficiently high its discovery can be attended by fatal consequences. This case involves high-voltage electricity. We do not regard possible exposure to electrical currents of this level a matter of routine human activity. The hazard is distinctly different from hazards to which persons commonly are subjected to—it represents a very special danger or peculiar risk. Whatever may be said regarding a "household" level of current is not applicable here, and on household current we offer no opinion.

■■■ It is reasonably necessary to reduce the hazard associated with a high-voltage supply line by placing bare electrical conductors where they remain inaccessible, or by insulating them adequately, or both. *See, e.g., Cantu v. Utility Dynamics Corp.,* 70 Ill.App.3d 260, 26 Ill.Dec. 160, 387 N.E.2d 990 (1979) (finding that installation of electrical lines is an inherently dangerous activity, and holding that persons handling electricity must protect the public against the danger by proper insulation of its wires where the public is likely to come into contact with them); *Lancaster v. Potomac Edison Co.,* 156 W.Va. 218, 192 S.E.2d 234 (1972) (holding that power company which maintains electric lines of high or dangerous voltage in a place it knows or should anticipate others may lawfully be for any reason, and in such a manner as exposes them to danger of contact, is bound to take precautions for their safety by insulation or other adequate means).[10]

---

**10.** The inherent dangers of high-voltage electricity have been recognized in *Montanez v. Cass,* 89

When insulated cable is placed in an accessible area, reasonable measures also must be taken to protect that insulation. Each situation calls for its own precautions, and the specifications of the state electrical code were intended to address the potential hazards involved in particular installations and situations. When these standards are not followed, we believe it to be highly probable that harm will occur. To one hiring an independent contractor to install high-voltage supply lines in an area accessible to the public, there is imputed in law the knowledge that members of the public will be exposed to a peculiar risk of harm if these standards are not met. In this case the supply line was not located in an area merely accessible to the public, but in an area where the public could be expected to be crowded closely together and where extensive physical contact with the electrical conduit running up the light pole was a certainty.

Additionally, we cannot view the inclusion of the plastic bushing as merely an operative detail of the work, so that its omission was merely "collateral" negligence for which the school district bore no responsibility. The electrical code specified its inclusion to guard against the danger inherent in, or peculiar to, the transmission of electricity. The negligence of the contractor created the very risk the requirement was intended to prevent—the escape of the current into the metal conduit and the electrocution of a member of the public.

*Nature of the school district's liability.* As we have stated above, the establishment of liability under a nondelegable duty does not give rise to vicarious liability. Under vicarious liability, one person, although entirely innocent of any wrongdoing and *without regard to duty*, is nonetheless held responsible for harm caused by the wrongful act of another. We acknowledge that commentators and cases speak of vicarious liability under the doctrine of a nondelegable duty. *See, e.g., Prosser & Keeton* § 71, at 511; 5 Fowler V. Harper et al., *The Law of Torts* § 26.11, at 84–93 (2d ed. 1986). "Vicarious liability" and "negligence of the contractor" are terms common to many of the authorities we have discussed. We reject any coupling of the concept of vicarious liability and nondelegable duty.

The common law develops by steps manifesting the imprint of established doctrines. Courts that lengthen the stride of the common law are wont to do so in well-worn and familiar doctrines. So we believe is the character of the imprint on nondelegable duty left by the rationale encompassing "vicarious liability to the same extent as the independent contractor." It should not be required that the contractor be liable. That is not the point. The court determines the presence of a peculiar risk and the need for precautions. The factfinder defines what reasonable precautions were necessary. Liability is based upon a showing of injury proximately caused by the absence of the necessary precautions. What the independent contractor knew or should have known is not at issue.

The doctrine with the proper fit is that of strict liability as developed in products liability cases. The liability of the owner or occupier of land rests upon injury proximately caused by defective work thereon as defined by the absence of a precaution made reasonably necessary in the face of peculiar risks inherent in the work. Once the court has found the need for precautions, it serves the policy underlying nondelegable duties to impose liability on the owner or occupier of land for injury proxi-

N.M. 32, 546 P.2d 1189 (Ct.App.1975), *rev'd in part on other grounds sub nom. New Mexico Elec. Serv. Co. v. Montanez,* 89 N.M. 278, 551 P.2d 634 (1976). That case involved the liability of an employer for injuries caused by the negligent installation of an electrical transformer and a secondary electrical system by an independent contractor. Later, a second independent contractor was hired to remove the system and an employee of that contractor was injured.

The court of appeals determined that the employer was responsible for the injuries under the inherently dangerous activity doctrine. 89 N.M. at 37–39, 546 P.2d at 1194–96. This Court reviewed that decision, and while it agreed that the installation was imminently dangerous to others, the Court declined to expand the duty of the employer to encompass the employees of independent contractors. *New Mexico Elec. Serv. Co.,* 89 N.M. at 281–82, 551 P.2d at 637–38.

mately caused by any failure to take reasonable precautions.

■ *-Joint and several liability.* Under our system of pure comparative fault, concurrent tortfeasors, generally, are severally liable for damages apportioned on the basis of the percentage of each tortfeasor's fault to the total fault attributed to all persons. *See* NMSA 1978, § 41–3A–1. Exceptions are made for intentional torts, vicarious liability, products liability cases, and other situations "having a sound basis in public policy." Section 41–3A–1(C). To these exceptions, joint and several liability applies. *Id.* This Court has not had occasion to add to the express exceptions of the Statute under the public policy grounds of Subsection (C)(4). We do so today.

■ The liability for a nondelegable duty that we impose directly upon the employer of an independent contractor is grounded in a special public policy to protect third persons in an area of inherent danger and to encourage conscientious adherence to standards of safety where injury likely will result in the absence of precautions. The test of liability is the presence or absence of reasonable precautions; and direct liability is not dependent upon any apportionment to an employer of his or her concurrent negligence in failure to ensure that an independent contractor takes necessary precautions.

Therefore, we hold that when precautions are not taken against inherent danger, the employer is jointly and severally liable for harm apportioned to any independent contractor for failure to take precautions reasonably necessary to prevent injury to third parties arising from the peculiar risk. Unless immune pursuant to the Tort Claims Act, the school district in this case is jointly and severally liable for that portion of the damages attributed to both the electrical contractor, whose installation vio-

lated minimum state standards, and the architect, who failed properly to supervise the project and inspect the system. In this case, that is the proportion of fault attributable to the failure to take the necessary precaution. This liability would be in addition to any fault apportioned by the jury to the school district for negligent maintenance.

■ *Jury instructions not necessary.* The question of whether an employer has a nondelegable duty is one for the trial judge after hearing all of the evidence. The finding of a nondelegable duty dictates the imposition of joint and several liability. While it would not be improper for the court to instruct the jury on the presence and effect of a nondelegable duty, there is no error in failing to do so. In this case Saiz tendered SCRA 1986, 13–405 (employer sued; no issue of employment, scope of employment, or agency), a general Uniform Jury Instruction on agency. Although UJI 13–405 was not intended for cases involving independent contractors generally, it is a correct abstract statement of the law concerning the legal effect of a nondelegable duty. That is, the employer is to be held responsible for the wrongful act of the employer's employee or agent. The reverse is true of UJI 13–404 (independent contractor). The trial court refused to give UJI 13–405, but gave UJI 13–404. We do not believe, however, that the latter statement of abstract law prejudiced the jury in its instructed duty to find and apportion fault.[11]

■ *Error preserved.* Further, the instruction requested by Saiz in this case concerning inherently dangerous activities, though not drafted so as to fully inform the court of the import of its terms, was another fairly accurate abstract statement of the law of nondelegable duty and was sufficient to call to the attention of the trial judge the applicability of that exception to the independent contractor rule. *See Bu-*

---

11. As we have stated, it is not necessary for the establishment of the liability of the owner or occupier of land, based upon the absence of required precautions in the face of a peculiar risk, that the proportionate fault of independent contractors be established. Parties may none-

theless establish such proportionate fault for purposes of the several liability of independent contractors to the plaintiff or for claims of contribution or indemnity among the employer and the independent contractors.

*dagher*, 97 N.M. at 118–21, 637 P.2d at 549–52 ("Once the judge accepted Amrep's defense of independent contractor, he should have realized that the exceptions to the general rule of independent contractors [were] applicable."). The trial judge ruled as a matter of law that the exception was inapplicable. This was incorrect.

■ Moreover, we cannot agree that, under the facts of this case, Saiz was required to raise the issue of joint and several liability in his pleadings as stated by the court of appeals. This is because the thrust of Saiz's theory of recovery, as presented at trial, was that the school district was completely responsible for the decedent's injuries based upon its own maintenance of the lighting system since the time it was installed.

■ A plaintiff is entitled to pursue at trial the plaintiff's theory of the case. This does not preclude the plaintiff from rebutting any other theory offered by way of defense. Where a defendant seeks to avoid liability through the apportionment of fault to other tortfeasors, the defendant should anticipate that, for any number of reasons, the defense may be subject to attack at trial. Rule 1–012(B) specifically provides a party may raise at trial any issue in law or fact raised by a pleading to which that party is not required to respond.

■ *No time bar under Section 37–1–27.* We briefly consider whether Saiz's recovery against the school district for breach of a nondelegable duty is subject to any time bar because the independent contractors in effect are immune from Saiz's direct suit under NMSA 1978, Section 37–1–27, a statute of repose.[12] We see no reason not to impose full responsibility on a joint tortfeasor subject to strict liability for breach of a nondelegable duty despite the fact that the plaintiff's direct suit against other tortfeasors is barred, and despite the fact that the joint tortfeasor upon whom full responsibility falls may lack a right of contribution from those granted the immunity. As we understand Section 37–1–27 and the circumstances surrounding its passage, the legislature intended to shift liability from builders to property owners (or other joint tortfeasors) for dangerous conditions arising out of improvements to real property ten years after the completion of a project. As explicitly stated in *Howell v. Burk*, 90 N.M. 688, 693, 568 P.2d 214, 219 (Ct.App.), *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977), this Statute was not intended to benefit the owner of real property. Rather than abrogate liability for all parties, the statutory immunity applies only to a select group—builders, architects, engineers, and other parties that furnish construction services.

Significantly, at the time this Statute was passed the liability of joint tortfeasors was joint and several. Thus, the effect of the Statute when passed was to make landowners potentially responsible for *all* damages.[13] When a landowner has responsibil-

---

12. The Statute provides, in pertinent part:

No action to recover damages for any injury to property, real or personal, or for injury to the person, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of a physical improvement to real property, nor any action for contribution or indemnity for damages so sustained, against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity, *shall be brought after ten years from the date of substantial completion of such improvements;* provided this limitation shall not apply to any action based on a contract, warranty or guarantee which contains express terms inconsistent herewith. NMSA 1978, § 37–1–27 (emphasis added).

We refer to this provision as a statute of repose because, unlike a statute of limitations, this Statute begins to run from a specific date unrelated to the date of injury and thus may abrogate a cause of action before it accrues. In contrast, a statute of limitations begins to run when a plaintiff's cause of action accrues or is discovered. *See Terry v. New Mexico State Highway Comm'n*, 98 N.M. 119, 121–22, 645 P.2d 1375, 1377–78 (1982). The constitutionality of Section 37–1–27 was upheld in *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (Ct.App.), *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977).

13. Nevertheless, the statute leaves open the possibility that a party can protect himself from the effect of the shift in liability by expressly contracting for a right of contribution not subject to the ten-year limitation. § 37–1–27 ("[T]his limitation shall not apply to any action based upon

ity as a joint tortfeasor based upon strict liability for breach of a nondelegable duty, we see no reason not to impose the same level of liability today. This would seem to have been exactly the level of responsibility the legislature had in mind when it passed Section 37–1–27 granting builders and other parties the immunity.

 *Immunity under Tort Claims Act.* Waiver of immunity under the Tort Claims Act does not encompass strict liability, and liability is based solely on a reasonably prudent person standard of care in the performance of traditional tort concepts of duty. The Act specifically provides:

> Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty. The Tort Claims Act in no way imposes a strict liability for injuries upon governmental entities or public employees.

NMSA 1978, § 41–4–2(B). While a nondelegable duty is a traditional tort concept, our analysis demonstrates that it is based upon injury proximately caused by defective work and not upon the reasonably prudent person standard of care. It is strict liability. The feature of strict liability that distinguishes it from negligence is that the reasonableness of acts or omissions of the party to be charged (*e.g.*, the possessor of land or the supplier of a product) is not a consideration. Specifically, as in the case of strict products liability, the question is whether injury was proximately caused by a risk that a hypothetical reasonably prudent person having full knowledge of the risk would find unacceptable *even though the person to be charged in fact neither knew nor could have known of such risk*

*at the time of the work. See, e.g.,* SCRA 1986, 13–1407 (Uniform Jury Instructions— Strict products liability; unreasonable risk of injury, and committee comment).

The distinctive test under the reasonably prudent person standard of care, on the other hand, is the foreseeability, *to one who has or should have knowledge,* that his or her act or failure to act will result in an unreasonable risk of injury. Traditionally, with the exception of certain fictions formerly attaching to the doctrine of contributory negligence, direct liability (as distinguished from vicarious liability) has depended on what the party to be charged knew or should have known.

 Direct liability of the possessor of land under a nondelegable duty to ensure against an unreasonable risk of injury from a special danger is based not on what the possessor knew or should have known, but upon breach of duty imputed as a matter of law. This is strict liability for which we believe the legislature granted immunity under the Tort Claims Act. To hold that liability for a nondelegable duty is not within the immunity of the Tort Claims Act would require that we limit the legislature's use of "strict liability" to blasting cases, products liability, or to new doctrines unknown to traditional tort law. The legislature enunciated no such limitation, and it in fact declared that liability is to be based solely on a reasonably prudent person standard of care. Consequently, we hold the school district was immune from its joint and several liability for the acts of the independent contractors.[14] We affirm only the judgment for fifteen percent of total damages apportioned for the school district's fault in negligent maintenance

---

a contract, warranty or guarantee which contains express terms inconsistent herewith.").

**14.** Because it begs the issue of direct versus vicarious liability, as we have posed it, we do not rely on Section 41–4–4(D)(1) for our conclusion that the school district is immune from suit in this case. Section 41–4–4(D)(1) imposes liability on the governmental entity for "any tort which was committed by the public employee while acting within the scope of his duty." "Public employee," in turn, means "any officer,

employee or servant of a governmental entity, *excluding independent contractors.*" Section 41–4–3(E) (emphasis added). Thus, by specifically excluding independent contractors from the definition of "public employee" (and thereby omitting from the financial responsibility assumed in Section 41–4–4(D)(1) liability for the torts of independent contractors), we can infer that the legislature retained immunity for the tortious acts of independent contractors committed within the scope of their duties.

subsequent to installation of the lighting system.

IT IS SO ORDERED.

BACA, MONTGOMERY, FRANCHINI and FROST, JJ., concur.