**SCHWARTZMAN, INC., Plaintiff,**

v.

**ATCHISON, TOPEKA & SANTA FE RAILWAY CO., Defendant.**

**Civ. No. 93–0307 JB.**

United States District Court,
D. New Mexico.

Dec. 3, 1993.

**476**

John M. Eaves, David V. Halliburton, Eaves, Bardacke & Baugh, P.A., Albuquerque, NM, for plaintiff.

Peter J. Adang, Peter J. Adang, P.C., Albuquerque, NM, for defendant.

### MEMORANDUM OPINION AND ORDER

BURCIAGA, Chief Judge.

■ THIS MATTER is before the Court on Defendant's August 12, 1993 motion to dismiss count VII (strict liability claim) of Plaintiff's complaint. Having reviewed the pleadings, the relevant law, and having heard the arguments of counsel, the Court finds Defendant's motion is not well taken and is denied.

### I. BACKGROUND

Plaintiff owns land in the South Valley area of Bernalillo County. Defendant owns a wood treatment and preservation facility adjacent to Plaintiff's property. From 1908 to 1972, Defendant used this facility to treat and preserve wooden railroad ties. On February 15, 1993, Plaintiff filed a complaint, subsequently removed to federal court, alleging Defendant improperly stored and disposed chemical waste which contaminated the groundwater and rendered Plaintiff's adjacent property unmarketable.

Plaintiff advances numerous theories of recovery. In count VII of its complaint, Plaintiff alleges Defendant's storage and disposal of hazardous waste was an abnormally dangerous activity under the Restatement (Second) of Torts §§ 519–520 (1977), thus warranting the imposition of strict liability. Defendant moved to dismiss count VII on the grounds that New Mexico law does not recognize the imposition of strict liability for activities other than those involving the detonation of explosives.

### II. ANALYSIS

■ For the purposes of a motion to dismiss, the material allegations of the complaint must be accepted as true. *Franklin v. Meredith*, 386 F.2d 958, 959 (10th Cir.1967). Dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court must construe the pleadings liberally and if any possibility of relief exists, the claim should not be dismissed. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir. 1973).

■ A federal court sitting in diversity must apply the law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Particularly, the federal court should look to the state supreme court's most recent statement of applicable law, *Southwest Forest Industries, Inc. v. Sutton*, 868 F.2d 352, 354 (10th Cir.1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1320, 108 L.Ed.2d 496 (1990), and if unavailing, to any state intermediate court's pronouncements. *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1543 (10th Cir.1992). In predicting how the New Mexico Supreme Court would rule in this case, this Court is guided by "policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies." *Weiss v. United States*, 787 F.2d 518, 525 (10th Cir.1986) (citation omitted).

■ The Restatement (Second) of Torts §§ 519–520 (1977) sets forth the doctrine of strict liability for abnormally dangerous activities. It is beyond dispute that "New Mexico has adopted the rule of absolute liability for ultrahazardous activities given by Restatement, Torts §§ 519, 520...." *First National Bank v. Nor–Am Agricultural Products, Inc.*, 88 N.M. 74, 79, 537 P.2d 682, 687 (Ct.App.), *cert. denied*, 88 N.M. 29, 536 P.2d 1085 (1975). Section 519 states the general principle that one who carries on an abnormally dangerous activity is liable for any harm caused, despite the exercise of

utmost care to prevent the harm. Section 520 provides six factors a court must consider in assessing whether a given activity is abnormally dangerous.[1]

New Mexico first recognized the doctrine of strict liability for abnormally dangerous activities in *Thigpen v. Skousen & Hise,* 64 N.M. 290, 294–95, 327 P.2d 802, 805 (1958). The New Mexico Supreme Court affirmed the imposition of strict liability upon one who conducted blasting. *Id.* Subsequently, New Mexico courts have never extended the doctrine of strict liability outside the blasting context. From this observation, Defendant argues the doctrine of strict liability in New Mexico is confined to blasting. Defendant also cites *Saiz v. Belen School District,* 113 N.M. 387, 397, 827 P.2d 102, 112 (1992), in which the New Mexico Supreme Court wrote, in dicta, "Application of the ultrahazardous activity doctrine has been restricted in our decisions to the use of explosives in blasting." *Id. See also Ruiz v. Southern Pacific Transportation Co.,* 97 N.M. 194, 200, 638 P.2d 406, 412 (Ct.App.1981) ("New Mexico has not yet recognized the theory of a landowner's strict liability except in cases where his activity has involved the use of explosives.").

However, earlier case law reveals New Mexico courts have not entirely halted development of strict liability doctrine and have at least analyzed the activity at issue under section 520 of the Restatement. The Court agrees with Judge Mechem's holding in *Schwartzman, Inc. v. General Elec. Co., et al.,* Civ. No. 93–0027 M (D.N.M. October 19, 1993), a companion suit filed by Plaintiff in this district: "[T]he New Mexico Supreme

Court has not foreclosed expansion of the [strict liability] doctrine where the § 520 criteria are met." *Id.* at 5.

In *First National Bank v. Nor–Am Agricultural Products, Inc.,* 88 N.M. 74, 79, 537 P.2d 682, 687 (Ct.App.), *cert. denied,* 88 N.M. 29, 536 P.2d 1085 (1975), the New Mexico Court of Appeals faced the issue of whether the treatment of grain with the hazardous chemical Panogen was an ultrahazardous activity. Noting the common usage of Panogen and the ability to limit the risk of harm through the use of warnings, the court declined to impose strict liability. *Id.* In *Rodgers v. City of Loving,* 91 N.M. 306, 307, 573 P.2d 240, 241 (Ct.App.1977), the Court of Appeals refused to characterize large-scale burning of dead leaves and grass as abnormally dangerous. The court wrote, "Even if we were to apply the rule of strict liability ... the instant situation does not present one of the factors necessary for the imposition: 'inability to eliminate the risk by the exercise of reasonable care.'" *Id.* In *Otero v. Burgess,* 84 N.M. 575, 579, 505 P.2d 1251, 1255 (Ct.App.), *cert. denied,* 84 N.M. 560, 505 P.2d 1236 (1973), the Court of Appeals recognized the possibility for the imposition of strict liability upon one who stored explosives in an inappropriate place.

In addition, these cases reveal that New Mexico courts, subsequent to *Thigpen,* have yet to confront a factual situation presenting a persuasive strict liability claim. With one exception, *Gutierrez v. Rio Rancho Estates, Inc.,* 93 N.M. 755, 605 P.2d 1154 (1980),[2] the activities at issue in past cases were not at all susceptible to the abnormally dangerous clas-

---

1. The six factors listed in the Restatement (Second) of Torts § 520 (1977) are as follows:
   (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
   (b) likelihood that the harm that results from it will be great;
   (c) inability to eliminate the risk by the exercise of reasonable care;
   (d) extent to which the activity is not a matter of common usage;
   (e) inappropriateness of the activity to the place where it is carried on; and,
   (f) extent to which its value to the community is outweighed by its dangerous attributes.
   The American Law Institute substituted "abnormally dangerous activity" for the term "ultra-

hazardous activity" in the Second Restatement. *See* Restatement (Second) of Torts § 519 reporter's note (1977). Courts continue to use both terms interchangeably.

2. In *Gutierrez,* 93 N.M. at 756, 605 P.2d at 1155, the New Mexico Supreme Court refused to impose strict liability for the artificial collection and channeling of large quantities of water, although other courts had found such activity to be ultrahazardous. *See, e.g., Rylands v. Fletcher,* L.R. 1 Ex. 265 (1866), *aff'd,* L.R. 3 H.L. (1868). But it did so in part because other jurisdictions had not applied strict liability for impoundment of waters in predominantly rural areas. *Gutierrez,* 93 N.M. at 757, 605 P.2d at 1156.

sification. *See Nor–Am,* 88 N.M. at 79, 537 P.2d at 687 (commonly used seed disinfectant); *Rodgers,* 91 N.M. at 307, 573 P.2d at 241 (burning of dead leaves); *Ruiz,* 97 N.M. at 196, 638 P.2d at 408 (maintenance of a railroad crossing). Therefore, the New Mexico Supreme Court's statement in *Saiz,* "Application of the ultrahazardous activity doctrine has been restricted in [New Mexico] decisions to the use of explosives in blasting," 113 N.M. at 397, 827 P.2d at 112, must be construed merely as an historical observation, not a substantive limitation on strict liability doctrine. The court, by this dicta, did not, and could not have intended to, forever freeze the development of strict liability doctrine in New Mexico. That "New Mexico has not yet recognized the theory of a landowner's strict liability except [in blasting cases]," *Ruiz,* 97 N.M. at 200, 638 P.2d at 412, does not necessarily mean that New Mexico will never recognize strict liability outside the blasting context.

Defendant's contention that only blasting is an abnormally dangerous activity in New Mexico renders the six factors of the Restatement superfluous. The assessment of whether a given activity is abnormally dangerous under the Restatement is a particularized, case-specific inquiry for the Court. *See* Restatement (Second) of Torts § 520 cmt. f (1977) ("Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to an exact definition."); *Otero v. Burgess,* 84 N.M. 575, 579, 505 P.2d 1251, 1255 (Ct.App.) (strict liability for the storage of explosives depends on the inappropriateness of the activity where maintained), *cert. denied,* 84 N.M. 560, 505 P.2d 1236 (1973). All blasting is not necessarily abnormally dangerous, dependent on the surrounding locale. Restatement (Second) of Torts § 520 cmt. j (1977). Likewise, activities other than blasting may or may not be abnormally dangerous, dependent upon an evaluation of the circumstances of the case at hand through application of the six Restatement factors.

In a case similar to the case at bar, the Tenth Circuit addressed the issue of whether Colorado common law recognizes strict liability for the generation, storage, treatment and disposal of hazardous waste. *Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1543–44 (10th Cir. 1992). The defendant argued for limited applicability of strict liability in Colorado, citing a Colorado Court of Appeals opinion which stated, "In Colorado, strict liability for ultrahazardous activities has been imposed only in cases involving blasting with dynamite and impounding of waters." *Forrest v. Imperial Distrib. Services,* 712 P.2d 488, 491 (Colo. App.1985), *rev'd on other grounds,* 741 P.2d 1251 (Colo.1987). The Tenth Circuit did not view this historical observation in *Forrest* "as a foreclosure of the strict liability for the generation, treatment, storage and disposal of every conceivable type of hazardous waste regardless of the circumstances." *Daigle,* 972 F.2d at 1544. The Tenth Circuit described the Restatement analysis as a "particularized inquiry," *id.,* and observed that nothing in Colorado decisional law "would indicate that the law regarding ultrahazardous activities is static in Colorado, and we see no reason why Colorado courts would not apply the Restatement to a new situation. . . ." *Id.* at 1544–45.

■ The theoretical premises for strict liability is that the activity is of such utility to the community that conducting it is not negligence; on the other hand, the activity's commensurate risks cannot be eliminated by the exercise of reasonable or even utmost care. Therefore, the defendant cannot be excused on the basis of any precautions taken and must pay for any harm he causes. *See* Restatement (Second) of Torts § 520 cmts. a & b (1977). The same can be said for the activity at issue in this case. It may not have been negligent for the Defendant to enter into wood treatment and preservation operations, but the chemical by-products and toxic wastes resulting from the activity presented risks that possibly could not have been eliminated by the exercise of reasonable care. The Plaintiff clearly alleges sufficient facts so as to support characterizing the Defendant's operations as abnormally dangerous. For purposes of a motion to dismiss, these allegations must be accepted as true. *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1992). The complaint alleges the high degree of significant risk of harm posed by Defendant's hazardous waste activities, cer-

tainly not a matter of common usage, conducted in close proximity to residential areas and municipal ground wells.

In addition to *Daigle,* courts in other jurisdictions have recognized the abnormally dangerous potential for hazardous waste generation, treatment, storage and disposal. *See State Dept. of Environmental Protection v. Ventron Corp.,* 94 N.J. 473, 468 A.2d 150, 157 (1983) (handling of toxic waste abnormally dangerous as a matter of law; "[I]t is time to recognize expressly that the law of liability has evolved so that a landowner is strictly liable to others for harm caused by toxic wastes that are stored on his property and flow onto the property of others."); *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1051–52 (2d Cir.1985); *Fletcher v. Tenneco, Inc.,* 1993 WL 86561, at * 7–9, 1993 U.S.Dist. LEXIS 3054, at * 25–30 (E.D.Ky. Feb. 22, 1993); *Hanlin Group, Inc. v. Int'l Minerals and Chemical Corp.,* 759 F.Supp. 925, 933–34 (D.Me.1990); *Lutz v. Chromatex, Inc.,* 718 F.Supp. 413, 430 (M.D.Pa.1989); *Sterling v. Velsicol Chemical Corp.,* 647 F.Supp. 303, 315–16 (W.D.Tenn.1986), *aff'd in part and rev'd in part on other grounds,* 855 F.2d 1188 (6th Cir.1988).

The dicta in *Saiz* and other opinions cannot be considered reliable predictors of how the New Mexico Supreme Court would rule if confronted with the facts of this case; nor should it be read as forever freezing strict liability doctrine in New Mexico. While a federal court should endeavor to apply current state law, it should also not hesitate to contribute to the development of the forum state's common law when sound reasons dictate advancement.

> [D]ue to the continuing development of, and the ongoing changes in, today's concepts of legal liability, we, in determining the state law that we are to apply, cannot permit ourselves to be confined by state court decisional approaches if we have sound grounds to believe that the highest state court would in a case like ours adopt a different approach than the approaches in prior cases.

*Calvert v. Katy Taxi, Inc.,* 413 F.2d 841, 846 (2d Cir.1969).

It is important to emphasize the significance of today's holding. The Court finds that New Mexico law recognizes a strict liability cause of action in cases involving hazardous waste generation, storage, treatment, and disposal. Whether strict liability should actually be imposed in this case is an issue awaiting further development of the record, requiring an evaluation of the six factors of section 520 of the Restatement. *See Piccolini v. Simon's Wrecking,* 686 F.Supp. 1063, 1069 (M.D.Pa.1988) ("[T]here are many factors that come into the equation when attempting to determine whether an activity is abnormally dangerous, and to properly analyze the question and issues involved the Court will require a more complete record."), *cited in Lutz v. Chromatex,* 718 F.Supp. 413, 430 (M.D.Pa.1989) (refusing to dispose of a strict liability claim for hazardous waste activities via a motion to dismiss).

## III. CONCLUSION

The common law of strict liability has changed in response to changing conditions in American society. The storage and disposal of toxic chemical waste poses the same threat to health and welfare today as the detonation of dynamite and impoundment of waters posed in years past. The Court finds that strict liability in New Mexico is not confined to blasting, and that Plaintiff has alleged sufficient facts supporting a characterization of Defendant's hazardous waste activities as abnormally dangerous.

Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant's August 12, 1993, motion to dismiss count VII be, and hereby is, denied.